# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 1:25cv21074

PAULA J. PHILLIPS, individually and on
behalf of all others similarly situated,

           Plaintiff,

    vs.

STRAIGHT SMILE LLC d/b/a
BYTE and DENTSPLY SIRONA INC.

         Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiff PAULA J. PHILLIPS, individually and on behalf of others similarly situated, files this Class Action Complaint against Defendants STRAIGHT SMILE LLC d/b/a BYTE ("Straight Smile" or "Byte") and DENTSPLY SIRONA INC. ("Dentsply," and together with Byte, the "Defendants"), and alleges as follows:

## INTRODUCTION

1.    Defendants Byte and Dentsply falsely and deceptively portray themselves as marketing two products – the Byte Aligner Systems and Impression Kits (hereinafter the "Products") – that will enable consumers to finally be able to afford an otherwise costly fix to crooked or malformed smiles.  Defendants proclaim on their website, "Every smile is as unique as the person that bears it. We help people own their smiles, proudly and confidently."[1]  Their advertising targets financially vulnerable victims, claiming, "At Byte, we believe in making the inaccessible, accessible. Our oral care platform makes it easier and more affordable for many

---

[1] Byte About Us (available at: https://www.byte.com/pages/about-us) (last accessed: Feb. 24, 2025).

people to get the smile and confidence they've been dreaming about."[2]  And Defendants engage consumers' trust and confidence through their false representations and advertisements, accessible from the State of Florida. For example, Defendants represent, "We are a team of real humans who care deeply about you, your Byte journey, and why you're improving your smile…. Being a part of the Byte team means keeping the customers at the heart of everything we do."[3]  In fact, however, Defendants' products are proven to be ineffective and dangerous to consumers.  And Defendants lacked essential feedback loops to timely advise regulators and, by extension the public, of adverse incidents involving their products.

2.      The truth about Defendants' Products was exposed publicly on or about October 24, 2024, when Defendants abruptly announced that they were indefinitely suspending sales and marketing of the Byte Aligner Systems and Impression Kits "while the Company conducts a review of certain regulatory requirements related to these products."[4]  This immediate suspension of sales was widely reported in the press;[5] however, Defendants have failed to make their customers whole for selling them Products based on false and deceptive representations.

3.      As a result of Defendants' wrongful acts and omissions, Plaintiff and other Class members have suffered damages. This is an action to redress those damages and stop further sales of these ineffective and dangerous products.

---

[2] *Id*.

[3]  Byte About Us, (available at: https://www.byte.com/pages/about-us?srsltid=AfmBOoo-JvFzWIt4wtgdXCs0rkoKGszX61VMdbmPkzBJqJ3xJEZRfw2q) (last accessed: Feb. 24, 2025).

[4]  Important Message for Patients (accessible at: https://www.byte.com/patient-message) (last accessed: Feb. 25, 2025).

[5] *See*, *e.g.,* American Association of Orthodontists, *Guidance for Byte Patients, During Uncertain Times from the American Association of Orthodontists*, (Oct. 26, 2024) ("Following the recent announcement that Byte is suspending its business, we understand you may be left with many questions and concerns about your ongoing treatment.") (available at: https://aaoinfo.org/treatment/guidance-for-byte-customers-during-uncertain-times-from-the-american-association-of-orthodontists/) (last accessed: Feb. 25, 2025).

## PARTIES

4.     Plaintiff Paula J. Phillips is a resident of Broward County, Florida, with a law office in Miami-Dade County, Florida. For twenty-eight years, she has been a member in good standing with The Florida Bar. She has resided and practiced law in this District at all times relevant to this action. During the Class Period, Ms. Phillips purchased a Byte Aligner Systems and Impression Kit from Defendants.

5.     Defendant Dentsply Sirona Inc. is a Delaware corporation with its principal place of business in North Carolina. Dentsply is a dental equipment manufacturer and dental consumables producer that markets its products across the United States, including this District, as well as globally.  Dentsply produces a wide variety of dental supplies, including clear teeth aligners.

6.     Defendant Straight Smile LLC, d/b/a Byte, is a Delaware limited liability company with its principal place of business in California. Together with Dentsply, Byte marketed, advertised, manufactured, distributed, and sold the Byte Aligner Systems and Impression Kits that are the subject of this action. Defendants did so through marketing and sales activity directed at consumers in the State of Florida and this District, such as the Plaintiff.

7.     On or about December 31, 2020, Defendant Dentsply entered an all-cash transaction to purchase 100% of Defendant Straight Smile, LLC d/b/a Byte for $1.04 billion. In a press release announcing the purchase, Defendant Dentsply described Byte as a "leading direct-to-consumer, doctor-directed clear aligner company" and heralded Byte as boasting "a leadership position in the rapidly growing direct-to-consumer, doctor-directed clear aligner market."[6]  The

---

[6] Dentsply Press Release, Jan. 4, 2021 (available at: https://investor.dentsplysirona.com/news-releases/news-release-details/dentsply-sirona-acquires-byter-leading-direct-consumer-

press release added, "Byte was founded on the commitment to improve access and affordability to orthodontic care…[by offering] effective treatment planning and an easy-to-use clear aligner solution delivered directly to a consumer's home."[7]

## JURISDICTION AND VENUE

This Court has original jurisdiction over all causes of action asserted herein under 28 U.S.C. § 1332(d) because (a) one or more Class members are citizens of a state that is different from the citizenship of Defendants; (b) the number of members of the putative class is more than 100; (c) the amount in controversy in the aggregate for the putative class exceeds the sum of $5 million, exclusive of interest and costs; and (d) the primary Defendants do not include States, State officials, and/or other governmental entities against whom the Court may be foreclosed from ordering relief.  It also has original jurisdiction under 28 U.S.C. § 1332(a) because there is diversity of citizenship between Plaintiff Ms. Phillips and each of the Defendants and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest costs.

8.     This Court has personal jurisdiction over Defendants Dentsply and Byte. They each (a) "operat[ed], conduct[ed], engag[ed] in, or carr[ied] on a business or business venture in this state," and/or "commit[ed] a tortious act within this state," and/or (b) "caus[ed] injury to persons or property within this state arising out of an act or omission by the defendant outside this state" where, "at or about the time of the injury," the "defendant was engaged in solicitation or service activities within this state," or "products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use," and/or (c) "breach[ed] a contract in this state by failing to perform acts

---

doctor#:~:text=CHARLOTTE%2C%20N.C.%20and%20LOS%20ANGELES,cash%20deal%20for%20%241.04%20billion%20) (last accessed: Feb. 24, 2025).
[7] *Id.*

required by the contract to be performed in this state." Fla. Stat. § 48.193(1)(1)1., 2., 6., 7. Moreover, Defendants each have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through their distribution, marketing, and selling of the Products within the State to render exercise of jurisdiction by this court permissible.

9.    Among other things, the causes of action alleged herein arose from Defendants' false and deceptive advertising, representations, and marketing activities in Florida and directed at consumers in Florida; Defendants' representations regarding the Products were accessible by Florida consumers, including the Plaintiff; and Defendants sent or caused to be sent communications to Plaintiff and other Class members in Florida. Additionally, for years, Defendants have each held a certificate of authority from the Florida Department of State, Division of Corporations to transact business in Florida and each has a registered agent in Florida, and Defendant Dentsply has a physical office location in Florida.

10.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Venue is also proper under 28 U.S.C. § 1391(d) because Defendants are subject to personal jurisdiction in this District in accordance with the terms of that provision. Among other things, Defendants' unlawful marketing and selling of the Products occurred in this District, and Defendants caused financial harm to members of the putative class that reside in this District.

## FACTUAL ALLEGATIONS

### I.    Defendants Engaged in False, Misleading and Deceptive Sales Practices

11.    Defendants' business model is premised on mailing directly to consumers an impression kit to enable a consumer to make a mold of his or her teeth at home.  Consumers then mail these impressions back to Defendant Byte for analysis. Defendant Byte then uses the impressions to develop a treatment plan and deliver several sets of clear aligners directly to

consumers, which fits in the customer's mouth to shift that customer's teeth towards the desired outcome. Defendants claim that customers' use of the Product and the associated treatment planning is overseen by "a nationwide network of licensed dentists and orthodontists to provide clear aligner treatments."8 But unlike more traditional teeth aligners (e.g., Invisalign or Defendant Dentsply's own SureSmile), Defendants do not require an initial assessment by a dentist or orthodontist for a customer to purchase and use the Products.

12.     Due to the lower costs associated with Defendants' Products, relative to costly aligners truly overseen and monitored by actual dentists and orthodontists, Defendants targeted lower income consumers with their Products.  In fact, they openly admit to targeting disadvantaged socio-economic groups on their website by claiming that "A straighter smile was once only **reserved for certain groups of people**. **We set out to change that, to <u>democratize</u> oral healthcare**. With affordable invisible aligners and a platform that can be accessed from anywhere, **we're making straighter smiles available to more people**."9

13.     Defendants represent on their website that their Products are "**Doctor directed. Your treatment plan is reviewed and prescribed by a dentist.**  Your clinical team is available to help monitor your progress."10  This a screenshot of the website:

---

8 Byte About Us, (available at: https://www.byte.com/pages/about-us) (last accessed: Feb. 24, 2025).

9 Byte Access, (available at: https://www.byte.com/pages/about-us) (last accessed: Feb. 24, 2025) (emphasis supplied).

10 Byte Homepage (available at: https://www.byte.com/) (last accessed: Feb. 24, 2025) (emphasis retained in original).



14.     The image to the right couples with the representation to the left. It features the picture of a medical scrubs (suggesting a dentist, orthodontist, or other health-care professional) demonstrating Defendants' Products to a customer, as if to create the impression that Defendants' products are individually directed, overseen, administered, reviewed, and confirmed by a "doctor."

15.     Similar representations appear in Defendants' public securities filings. As just one of many examples, on March 1, 2022, Defendant Dentsply filed its annual report on Form 10-K with the Securities and Exchange Commission containing the same variety of aforementioned misrepresentations.  In it, Defendant Dentsply explained that while "the Company's Byte aligner business in the U.S. is subject to various state laws, rules and policies which govern the practice of dentistry," it "contracts with an expansive nationwide network of independent licensed dentists and orthodontists for the provision of clinical services, including the oversight and control of each customer's clinical treatment in order to comply with these regulations and ensure that the business does not violate rules pertaining to the corporate practice of dentistry."[11]

---

[11]   Dentsply Sirona Inc. 10-K Form (available at: https://investor.dentsplysirona.com/static-files/d965cdcd-377b-4ffa-a0e4-4c5be486b483) (last accessed: Feb. 24, 2025).

16.     Defendant Dentsply has since repeated this claim. As yet another example, in its November 7, 2022, amendment to its quarterly report on Form 10-Q/A with the Securities and Exchange Commission, Defendant Dentsply and represented, "Byte contracts with an expansive nationwide network of independent licensed dentists and orthodontists for the provision of clinical services, including the oversight and control of each customer's clinical treatment."[12]

17.     By and through these representations, Defendants promoted the Products as safe and effective for the treatment of the misaligned teeth.

18.     These representations, however, were materially false, deceptive, and misleading. Among other things, the Products were not sufficiently overseen, reviewed, or directed by a medical professional. Among other things, from October 2020 to October 2024, there were hundreds of incidents involving adverse events associated with the Byte Aligner Product. These incidents involved a broad range of complications suffered by customers, including the following:

(a)     Allergic reactions

(b)     Bite misalignment

(c)     Bone loss

(d)     Breaking and chipping of teeth

(e)     Choking on aligners due to poor fit

(f)     Cutting of gums due to aligners' sharp edges

(g)     Facial swelling and abscess in mouth

(h)     Gum recession and flaring of teeth

(i)     Jaw clicking

(j)     Locked jaw

---

[12] Dentsply Sirona Inc. 10-Q/A Form (available at: https://investor.dentsplysirona.com/static-files/5a8b218c-9fa1-405f-891d-7ff907f27a0a) (last accessed: Feb. 24, 2025).

(k)     Loosening of teeth

(l)     Loosening of veneer

(m)     Periodontal disease

(n)     Pulp necrosis resulting in a dead tooth

(o)     Severe open bite

(p)     Tooth discoloration

(q)     Tooth fracture

(r)     Worsening of patient bite

19.     As another example of the widespread severity of the claims at the core of this Complaint, one federal agency's publicly available Manufacturer and User Facility Device Experience database includes at least 500 reported adverse events associated with Defendants' Byte Aligner from October 2020 to the present.

20.     That the Products are associated with this many medical conditions indicates how, contrary to Defendants' representations, they lacked sufficient medical oversight of the Products. Additionally, the demonstrate that, contrary to Defendants' representations, the Products were not safe and effective in the treatment of misaligned teeth.

21.     Furthermore, Defendants failed to have in place or adequately implement a reporting system to channel complaints from consumers to regulators regarding Defendants' Products to address the deficiencies in their Products.

22.     Defendants have generated a substantial amount of income from availing themselves of consumers in the State of Florida from the sale of Defendants' Products.

## II.     <u>Defendants Finally Admit to The Fatal Flaws in their Products</u>

23.     On October 24, 2024, Defendant Dentsply announced that it was suspending the sale and marketing of Byte Aligner Systems and Impression Kits "while the Company conducts a review of certain regulatory requirements related to these products."[13]

24.     The following day, on October 25, 2024, Defendant Byte posted an "**Important Message for Patients**."[14]  The message from Defendant Byte claims, in relevant part, "Patient safety is at the center of everything Byte does…we have determined that our patient onboarding workflow may not provide adequate assurance that certain contraindicated patients do not enter treatment with Byte Aligners…we made the decision to voluntarily pause shipment and processing of new and recently placed orders for Byte Aligners and Impression Kits while we perform a more comprehensive review."[15]  The message continues to name several serious medical concerns associated with the Products: "active periodontal disease, severe open bite, severe overjet, tooth malocclusion requiring surgical correction, mixed dentition, have dental prosthetics or dental implants, or are an adolescent with a skeletally narrow jaw."[16]

25.     Upon information and belief, Defendants knew or should have known that serious adverse effects such as these were associated with the Products well before this message was posted in October 2024. For instance, from October 30, 2020, through December 27, 2023, there were over 175 reported adverse events associated with Defendants' Byte Aligner Product, which

---

[13]Businesswire                                    (available                                    at: https://www.businesswire.com/news/home/20250103567867/en/Kirby-McInerney-LLP-Urges-Investors-in-Dentsply-Sirona-Inc.-XRAY-to-Inquire-About-Their-Rights-in-Class-Action-Lawsuit#:~:text=On%20October%2024%2C%202024%2C%20after,Form%208%2DK%20after%20markets) (last accessed: Feb. 25, 2025).

[14] Important Message for Patients (available at: https://www.byte.com/patient-message) (last accessed: Feb. 25, 2025).

[15] *Id*.

[16] *Id*.

included incidents involving several of the same conditions reported by Defendant Byte in its October 2024 message.

26.     Even though Defendants' business model is premised on advertising that Defendants' Products are more cost effective than traditional clear aligners requiring costly and time consuming in-office medical appointments, Defendants' October 25, 2024, press release admits that customers will need to incur the costs and time to visit doctors.  Defendants' **Important Message for Patients** states, "We also recommend that you visit a dentist to review your overall oral health.  *Id*.[17]

27.     The **Important Message for Patients** ends with Defendants claiming, "We expect more information to be available at **www.byte.com** in the coming days."  Yet, in the more than four months since the posting, Defendants have failed to provide any additional material information to their customers.

28.     Notwithstanding these concerning admissions, Defendants still continue to the date of this filing to market, advertise, and sell the Products at issue. Although the "**Important Message for Patients**" claims that Defendants had "made the decision to voluntarily pause shipment and processing of new and recently placed orders for Byte Aligners and Impression Kits," the Byte homepage still advertises and promotes the Products. Among other things, Defendants' website continues to tout the Products with prominent images of young people, the bolded statement, "**ALIGN WITH CONFIDENCE**," the claim that the Products are "FEATURED IN" Entrepreneur Magazine, Forbes, InStyle, and Harvard Medical School, and the statement that the

---

[17] *Id.* Notwithstanding the concerning medical issues admitted by Defendants in the October 25, 2024 **Important Message for Patients**, Defendants' posting curiously states, "All other patients, please continue per your treatment plan."

"Byte Aligner System is indicated for the treatment of tooth malocclusion in patients with permanent dentition."[18]

### III.     Plaintiff Paula J. Phillips Suffered Damages Due to Defendants' Conduct

29.     On or about April 18, 2024, Plaintiff Paula J. Phillips received an ad from Defendants concerning the Products.  That same day, Ms. Phillips accessed Defendants' website www.Byte.com from her personal computer in this District.

30.     On or about the same date, Ms. Phillips entered into an installment contract to pay $3,338.02 from a Florida-based account to Defendant Byte for the purchase of the Products. Multiple installment payments have been debited from her account.

31.     In or about early May 2024, Ms. Phillips received in this District the impression kit from Defendants. She made the impression and mailed it back to Defendants.  Several days later, on or about May 4, 2024, Defendants emailed Ms. Phillips, to her computer in this District, her purported "treatment plan."

32.     In or about late May 2024, Defendants shipped the Byte Aligner product to Ms. Phillips' home in this District.  Upon receipt, pursuant to the instructions from Defendants, Ms. Phillips began using the product. However, by the following month, June 2024, she began experiencing pain and bleeding in her mouth from the use of Defendants' Byte Aligner product.  The severity of the pain and bleeding worsened until Ms. Phillips stopped using the product.

33.     She inquired about a refund. However, Defendants' website advised that due to the nature of the product, no refunds are available. Thereafter, on or about February 12, 2025, Ms.

---

[18] Transform your smile from home | Byte (available at https://www.byte.com) (last accessed: Mar. 1, 2025).

Phillips learned of Defendants' above-mentioned fall 2024 public statements.  She then contacted Defendants to request a full refund of the purchase price. None was paid.

<h3 style="text-align:center">IV.   <u>CLASS ACTION ALLEGATIONS</u></h3>

34.    Plaintiff Ms. Phillips brings this action on behalf of herself and all other similarly situated individuals pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, seeking damages pursuant to common law, consumer protection, and other statutory law on behalf of the Class. Plaintiff Ms. Phillips also brings this action on behalf of herself and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking injunctive and declaratory relief.

35.    <u>Class Definition</u>: Plaintiff Ms. Phillips brings this action on behalf of herself and the Class defined as follows: All persons in Florida who purchased a Byte Aligner System and Impression Kit.

36.    Excluded from the class are Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter. Plaintiff Ms. Phillips reserves the right to amend or otherwise alter the class definition at the appropriate time, or to propose subclasses, in response to facts learned from investigation or discovery or otherwise.

37.    <u>Numerosity</u>: The proposed Class is so numerous that individual joinder of all members is impracticable. The exact number of Class members is not known at this time but can be determined based on Defendants' sales records.

38.    <u>Predominance of Common Questions</u>: There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of law and fact include:

a.  Whether Defendants engaged in the unlawful conduct alleged herein;

b.  Whether Defendants' representations in advertising, marketing, and/or selling were unlawful, false, deceptive, and/or misleading;

c.  Whether Defendants misled Plaintiff and Class members about the Products;

d.  Whether Defendants' representations deceived Plaintiff and Class members;

e.  Whether Defendants were unjustly enriched by their unlawful conduct;

f.  Whether Defendants' actions violate state consumer protection laws;

g.  Whether Defendants' breached their contract with the Plaintiff and Class members;

h.  Whether Defendants' actions breached express warranties;

i.  Whether Defendants' actions breached implied warranties;

j.  Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief;

k.  Whether Defendants' conduct economically injured Plaintiff and Class members (and in what amount); and

l.  Whether Plaintiff and Class members are entitled to the recovery of punitive damages (and in what amount).

39.  <u>Typicality</u>: Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the class. Further, there are no defenses available to Defendant that are unique to Plaintiff or to any particular Class members.

40.  <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

41. <u>Superiority of Class Action</u>: Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of Defendants' unlawful and wrongful conduct described herein. A class action is superior to other available remedies for the fair and efficient adjudication of the present controversy.

## <u>COUNT I – VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT</u>
### <u>(On behalf of the Class)</u>

42. Plaintiff incorporates and realleges paragraphs 1 through 41 above as if fully set forth herein.

43. This is an action pursuant to Florida Statutes 501.201, *et seq.*, otherwise known as Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

44. The FDUTPA renders unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. Fla. Stat. § 501.204.

45. Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

46. Defendants engaged in unfair, deceptive, and/or unconscionable acts or practices, by, among other things, doing the following:

   a. misrepresenting the level of doctor oversight concerning the design and manufacture of Defendants' Products;

   b. misrepresenting the level of doctor oversight concerning individual consumers' use of Defendants' Products;

c.  selling Defendants' Products while they were not safe for human use;

d.  marketing, distributing, selling, and warranting Defendants' Products which were of a lesser effectiveness than was represented to Plaintiff and Class members;

e.  failing to take those steps necessary to discontinue marketing, distributing, selling, and warranting Defendants' Products after Defendants knew or reasonably should have known of adverse events associated with the Products;

f.  failing to adequately advise customers of their rights to a refund;

g.  failing to follow reasonably appropriate procedures concerning feedback loops for consumers complaining about these products to pass these consumer complaints to government regulators;

h.  failing to reasonably inform the consumer public of adverse events associated with the Products;

i.  failing to correct false, misleading, or deceptive statements about the safety and effectiveness of Defendants' Products to consumers; and

j.  continuing to design, manufacture, promote, and sell Defendants' Products after October 2024, when the **"Important Message for Patients"** was posted by Defendants.

47.  Through such unfair, unconscionable, and/or deceptive acts or practices, Defendants have caused damages to Plaintiff and the Class Members.

48.  FDUTPA provides for declaratory relief. Fla. Stat. § 501.211. Plaintiff, on behalf of herself and the Class members, seeks a declaration that Defendants' act or practice of marketing, advertising, and selling the Products violate FDUTPA.

16

49.     FDUTPA also provides for injunctive relief. *Id.* Plaintiff, on behalf of herself and the Class members, seeks to enjoin Defendants' continued act or practice of marketing, advertising, and selling the Products. Without an injunction, consumers will continue to be deceived and damaged by Defendants' unlawful conduct as described herein.

50.     FDUTPA also provides for the recovery of actual damages, plus attorneys' fees and costs as provided in Fla. Stat. § 501.2105. Plaintiff, on behalf of herself and the Class members, seeks actual damages, attorney's fees and costs as provided by FDUTPA.

### COUNT II - VIOLATION OF FLORIDA MISLEADING ADVERTISING STATUTE § 817.41 (On behalf of the Class)

51.     Plaintiff incorporates and realleges paragraphs 1 through 41 above as if fully set forth herein.

52.     Pursuant to Florida Statutes § 817.41, Florida law prohibits "any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses."

53.     Defendants made, or disseminated or caused to be made or disseminated, advertisements before the general public of the State of Florida by way of printed and electronic form as set forth above.

54.     Defendants knew or through the exercise of reasonable care or investigation could or might have ascertained, that such advertisements were untrue or misleading. Among other things, Defendants knew or reasonably should have known that their advertisements concerning

the Products on their website, in public releases and documents, and elsewhere in the public domain:

    a.   misrepresented the level of doctor oversight concerning the design and manufacture of Defendants' Products;

    b.   misrepresented the level of doctor oversight concerning individual consumers' use of Defendants' Products;

    c.   misrepresented that Defendants' Products were safe and effective for human use;

    d.   failed to include reasonable disclosure of adverse events associated with the Products;

    e.   failed to adequately advise customers of their rights to a refund;

    f.   failing to correct previously-made false, misleading, or deceptive statements about the safety and effectiveness of Defendants' Products to consumers; and

    g.   continued to be made even after October 2024, when the "Important Message for Patients" was posted by Defendants.

55.    Defendants' advertisements were made or disseminated with the intent or purpose, either directly or indirectly, of selling the Products to the public.

56.    Defendants were named in and/or obtained the benefits of such misleading advertising and associated sales of the Products referenced in the misleading advertising. As such, under Florida Statutes § 817.41(4), there is a rebuttable presumption that that Defendants are responsible for such misleading advertisements and associated sales of the Products.

57.    Plaintiff and members of the Class justifiably relied to their detriment on Defendants' misleading advertisements concerning the Products.

58.     As a direct and proximate cause of Defendants' violation of Florida Statutes § 817.41, Plaintiff and Class members suffered damages.

59.     Plaintiffs are entitled reasonable attorney's fees and costs pursuant to Florida Statutes § 817.41(6).

60.     Plaintiffs are entitled to punitive damages against Defendants pursuant to Florida Statutes § 817.41(6).

## COUNT III - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (on behalf of the Class)

61.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 41 as if fully set forth herein.

62.     Defendants sold the Products to Plaintiffs and Class members. As such, the Plaintiffs and Class members were in privity with Defendants.

63.     The Plaintiff and Class members were foreseeable users of the Products.

64.     The Plaintiffs and Class members used the Products in their intended manner at the time of injury. That is, they used the Products for the purpose of correcting misalignment of teeth.

65.     The Products were defective at the time of sale from Defendants to the Plaintiff and Class members. That is, they were not safe or effective for the purpose of correcting misalignment of teeth and are associated with a series of adverse medical consequences.

66.     Defendants had reasonable notice of the Products' defect before the filing of this suit. That is, Defendants were on notice of hundreds of adverse events involving consumer use of the Products, and Plaintiff informed Defendants of the defects associated with the Products sold to her.

67.     Defendants had an opportunity to inspect their defective Products and cure any breach prior to the initiation of litigation but failed to reasonably and timely correct the breach.

Among other things, Defendants have failed to pay full refunds and otherwise compensate the Plaintiff and other Class members for the damages incurred as a result of having purchased the defective Products.

68.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have suffered damages.

## COUNT IV - BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR USE
### (on behalf of the Class)

69.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 41 as if fully set forth herein.

70.     Defendants sold the Products to Plaintiffs and Class members. As such, the Plaintiffs and Class members were in privity with Defendants.

71.     In connection with the sale of the Products, Plaintiff and Class members made known to Defendants the purpose for which they were buying the Products, that is, for the purpose of correcting misaligned teeth.

72.     At the time of the sale of the Products, Defendants had reason to know that the Plaintiff and other Class members were purchasing the Products for the particular purpose of correcting misaligned teeth and that they were relying on Defendants' skill or judgment in the manufacture of the Products.

73.     Defendants impliedly warranted that the Products were fit for the particular use of correcting misaligned teeth. Defendants breached this implied warranty because, as set forth herein, the Products were not fit for that particular use.

74.     Defendants had reasonable notice of the Products' lack of fitness before the filing of this suit. That is, Defendants were on notice of hundreds of adverse events involving consumer

use of the Products, and Plaintiff informed Defendants of the lack of fitness associated with the Products sold to her.

75.     Defendants had an opportunity to inspect their defective Products and cure any breach prior to the initiation of litigation but failed to reasonably and timely correct the breach. Among other things, Defendants have failed to pay full refunds and otherwise compensate the Plaintiff and other Class members for the damages incurred as a result of having purchased the defective Products.

76.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have suffered damages.

## <u>COUNT V - BREACH OF EXPRESS WARRANTY</u>
### (on behalf of the Class)

77.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 41 as if fully set forth herein.

78.     Defendants sold the Products to Plaintiffs and Class members. As such, the Plaintiffs and Class members were in privity with Defendants.

79.     In connection with the sale of the Products, Defendants expressly warranted to Plaintiff and other Class members that the Products were manufactured specifically for consumers with oversight and direction from doctors, and that the Products were otherwise safe and effective in the correction of misaligned teeth.

80.     Defendants breached the express warranties by selling them Products that were manufactured and prepared for the Plaintiff and other Class members without reasonably sufficient oversight and direction from doctors and without meeting basic requirements of safety and efficacy for the correction of misaligned teeth.

81.     Defendants had reasonable notice of the Products' breach of these express warranties. That is, Defendants were on notice of hundreds of adverse events involving consumer use of the Products, and Plaintiff informed Defendants of the lack of fitness associated with the Products sold to her.

82.     Defendants had an opportunity to inspect their defective Products and cure any breach prior to the initiation of litigation but failed to reasonably and timely correct the breach. Among other things, Defendants have failed to pay full refunds and otherwise compensate the Plaintiff and other Class members for the damages incurred as a result of having purchased the defective Products.

83.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have suffered damages.

## <u>COUNT VI - BREACH OF CONTRACT</u>
### (on behalf of the Class)

84.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 41 as if fully set forth herein.

85.     Plaintiff and Class members had a contract with Defendants whereby Defendants promised to Plaintiff and other Class members that the Products were manufactured specifically for consumers with oversight and direction from doctors, and that the Products were otherwise safe and effective in the correction of misaligned teeth.

86.     Defendants breached their contract with the Plaintiff and Class Members. Among other things, the Products were not safe and effective and were not sufficiently overseen, reviewed, or directed by a doctor.

87.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have suffered damages.

## COUNT VII – UNJUST ENRICHMENT
### (on behalf of the Class)

88.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 41 as if fully set forth herein.

89.     Plaintiff and other Class members conferred a benefit on Defendants in the form of money paid by the Plaintiff and other Class members when they purchased Defendants' Products.

90.     Defendants voluntarily accepted and retained the benefit of the money paid by the Plaintiff and other Class members.

91.     Defendants accepted money from Plaintiff and other Class members as a result false, misleading and deceptive advertising and promotional statements as alleged herein. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

92.     Plaintiff and the other Class members lack an adequate remedy at law.

93.     Plaintiff and Class members are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this case be certified and maintained as a class action and for judgment to be entered against Defendants as follows:

a.  certify the Class as proposed herein, designating Plaintiffs as Class representative, and appointing undersigned counsel as Class Counsel;

b.  award all damages to which Plaintiffs and Class members are entitled under applicable law;

c.  enter declaratory relief to the effect that Defendants' conduct is violative of FDUTPA;

d.   enjoin Defendants from further engaging in acts or practices violative of FDUTPA;

e.   award Plaintiff and the Class all attorneys' fees and costs allowable by law;

f.   award Plaintiff and the Class any and all pre-judgment and post-judgment interest as allowed by law; and

g.   grant such other and further relief this Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff, on behalf of herself and the Class members, demands trial by jury of all issues so triable.

Dated: March 7, 2025                    Respectfully submitted,

**LAW OFFICES OF JORDAN A. DRESNICK**
901 Brickell Key Blvd.
Suite 2901
Miami, FL 33146
Tel.: 786-220-8785

By: /s/ Jordan A. Dresnick
Jordan A. Dresnick
Florida Bar No. 058529
E-mail: jordandresnick@gmail.com

**GROSSMAN ROTH YAFFA COHEN, P.A.**
2525 Ponce de Leon Boulevard, Suite 1150
Coral Gables, FL 33134
Telephone: 305-442-8666
Facsimile: 305-285-1668

By: */s/ Stuart Z. Grossman*
Stuart Z. Grossman
Fla. Bar No. 156113
szg@grossmanroth.com
Manuel A. Arteaga-Gomez
Fla. Bar. No. 18122
aag@grossmanroth.com
Aimee A. Ferrer

Fla. Bar No. 17827
aaf@grossmanroth.com
Ryan J. Yaffa
Fla. Bar. No. 1026131
rjy@grossmanroth.com

*Attorneys for Plaintiff Paula J. Phillips*