**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:25-cv-21074-GAYLES-GOODMAN**

PAULA J. PHILLIPS, individually and on )
behalf of all others similarly situated, )
                                           )
                   Plaintiff, )
                                           )
                     v. )
                                           )
DENTSPLY SIRONA INC., )
                                           )
                   Defendant. )
                                           )

**<u>DENTSPLY SIRONA INC.'S PETITION TO COMPEL ARBITRATION AND STAY
PROCEEDINGS AND SUPPORTING MEMORANDUM OF LAW</u>**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND............................................. 2

 A. Plaintiff agreed to arbitrate any disputes regarding the Byte Aligners and waived any class action........................................................................... 2

 B. Plaintiff filed this putative class action in violation of the contract to which she agreed........................................................................................... 6

III.  ARGUMENT ...................................................................................................... 8

 A. The Court must stay this action in favor of arbitration. ............................. 8

 B. Plaintiff can be compelled to arbitrate her claims against Dentsply..................... 11

  1. Plaintiff is equitably estopped from arguing that her claims against Dentsply are not arbitrable. ................................................... 11

  2. Plaintiff alleges that Dentsply is a third-party beneficiary of the contract between herself and Byte. ........................................ 14

 C. Even if Plaintiff raises issues relating to arbitrability of her claims, it is the arbitrator – not the Court – that decides the issue.................................. 15

IV.  CONCLUSION.................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011).................................................................................10

*Attix v. Carrington Mortg. Servs., LLC*,
  35 F.4th 1284 (11th Cir. 2022) ............................................................16

*Ayala-Rodriguez v. Falic Fashion Group LLC*,
  Case No. 18-62034-CIV, 2019 Wl 13216292 (S.D. Fla. Mar. 6, 2019) ..................................13

*Bachewicz v. JetSmarter, Inc.*,
  No. 18-CV-62570, 2019 WL 1900332 (S.D. Fla. Apr. 29, 2019) ..........................................10

*Brooks v. Event Ent. Grp., Inc.*,
  No. 20-22495-CIV, 2020 WL 6882779 (S.D. Fla. Nov. 23, 2020) ....................................8, 10

*Calcaterra v. Baptist Health South Florida, Inc.*,
  733 F.Supp.3d 1349 (S.D. Fla. 2024) ....................................................14

*Cruz v. Cingular Wireless, LLC*,
  648 F.3d 1205 (11th Cir. 2011) ............................................................10

*Day v. Persels & Assocs., LLC*,
  No. 8:10CV-2463-T-TGW, 2015 WL 413224 (M.D. Fla. Jan. 30, 2015)..............................16

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213, 218 (1985)....................................................................9

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995)..........................................................................15

*Gunson v. BMO Harris Bank, N.A.*,
  43 F.Supp.3d 1396 (S.D. Fla. 2014) ..................................................11, 12

*Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*,
  154 F. Supp. 3d 1318 (S.D. Fla. 2016) ................................................16

*Hill v. Rent-A-Ctr., Inc.*,
  398 F.3d 1286, 1288 (11th Cir. 2005) ....................................................8

*Integrated Sec. Servs. v. Skidata, Inc.*,
  609 F. Supp. 2d 1323 (S.D. Fla. 2009) ................................................16

*Jenkins v. First Am. Cash Advance of Ga., LLC*,
400 F.3d 868 (11th Cir. 2005) .................................................................10

*Jones v. Waffle House, Inc.*,
866 F.3d 1257 (11th Cir. 2017) ...............................................................15

*Klay v. All Defendants*,
389 F.3d 1191 (11th Cir. 2004) .................................................................9

*Laine v. JetSmarter, Inc.*,
No. 18-CV-62969, 2019 WL 1900339 (S.D. Fla. Apr. 29, 2019) ...........10

*Martinez v. Carnival Corp.*,
744 F.3d 1240 (11th Cir. 2014) ..........................................................15, 16

*Mintz & Fraade, P.C. v. Beta Drywall Acquisition, LLC*,
59 So.3d 1173 (Fla. 4th DCA 2011) ..........................................................8

*Morselife Foundation, Inc. v. Merrill Lynch Bank & Trust Co., FSB*,
No. 09-81143-civ, 2010 WL 2889932 (S.D. Fla. July 21, 2010) ............11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......................................................................................9

*Parnell v. CashCall, Inc.*,
804 F.3d 1142 (11th Cir. 2015) ...............................................................16

*Pendergast v. Sprint Nextel Corp.*,
691 F.3d 1224 (11th Cir. 2012) ...............................................................10

*Physician Consortium Services, LLC v. Molina Healthcare, Inc.*,
414 Fed. Appx. 240 (11th Cir. 2011) ..................................................11, 13

*Preston v. Ferrer*,
552 U.S. 346, 353 (2008) ...........................................................................8

*Randolph v. Green Tree Fin. Corp.-Alabama*,
244 F.3d 814 (11th Cir. 2001) .................................................................10

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63, 68-69 (2010) .......................................................................15

*Salco Distributors, LLC v. iCode, Inc.*,
No. 8:05 CV 642 T 27TGW, 2006 WL 449156 (M.D. Fla. Feb. 22, 2006) ......................9, 10

*Schacht v. Hartford Fire Ins. Co.*,
1991 WL 171377 (N.D. Ill. Aug. 30, 1991) ...............................................8

iii

*Segal v. Amazon.com, Inc.*,
    763 F. Supp. 2d 1367 (S.D. Fla. 2011) ...................................................................10

*Smith v. Spizzirri*,
    601 U.S. 472 (2024)..............................................................................................9

*Vaden v. Discover Bank*,
    556 U.S. 49 (2009)................................................................................................8

*VVG Real Estate Invs. v. Underwriters at Lloyd's, London*,
    317 F. Supp. 3d 1199 (S.D. Fla. 2018) ..................................................................8, 9

*XL Funding, Inc. v. John J. Griggs, III, et al.*,
    No. 20-24782-CIV, 2021 WL 1976028 (S.D. Fla. Apr. 26, 2021)...........................................7

**Statutes**

9 U.S.C. § 1 *et seq*.............................................................................................1, 5

9 U.S.C. § 2....................................................................................................8

9 U.S.C. § 4.........................................................................................8, 9, 10, 11

Fla. Stat.§§ 501.201-501.213 ........................................................................6, 7, 12, 13

Fla. Stat. § 817.41 ....................................................................................6, 7, 12

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) .......................................................................8

Pursuant to 9 U.S.C. § 1 *et seq.*, Defendant Dentsply Sirona, Inc. ("Dentsply") respectfully submits this petition to compel arbitration of Plaintiff Paula J. Phillips's claims and to stay this action pending resolution of the arbitration.

## I.      INTRODUCTION

In the event this Court determines that it has personal jurisdiction over Dentsply – and it should not – this action must nonetheless be stayed pending arbitration of Plaintiff's claims.

Plaintiff originally filed this action against two entities:  SureSmile LLC d/b/a Byte ("Byte") and its parent company, Dentsply.  After Byte and Dentsply filed a motion to compel arbitration and stay this action on the grounds that Plaintiff had agreed to arbitrate any disputes regarding the products that she had purchased from Byte and waived any class action right, Plaintiff decided to drop Byte and proceed against Dentsply only, in a conspicuous effort to circumvent her agreements.  But similar misguided attempts at an end run around binding and valid arbitration agreements have been shut down by the Eleventh Circuit and courts across this District.  This Court should do the same.

In her Amended Complaint, Plaintiff again concedes that she entered into an agreement with Byte pursuant to which she purchased an impression kit and a set of clear Byte Aligners designed to straighten her teeth over time.  All of her claims are again based on the fundamental allegation that she is entitled to a refund of the purchase price that she paid under the contract with Byte.  In that contract, she expressly agreed that (1) any dispute relating to either the agreement or the products she purchased would be decided by binding arbitration and not in a court of law; (2) the arbitrator – and not a court – would have the exclusive authority to resolve any disputes relating to the interpretation, enforceability, or formation of the agreement; and (3) any dispute would be determined on an individual basis, and not as a class, representative, or collective action.

Dentsply anticipates Plaintiff will argue that these agreements should be disregarded because Dentsply is not a signatory to the contract between Plaintiff and Byte. But Plaintiff will be wrong. The Eleventh Circuit and this Court have recognized that a non-signatory may compel arbitration in a number of situations, especially where, as here, the claims are related to and presume the existence of the underlying contract or are based on the same underlying facts. A plaintiff will also be estopped from objecting to arbitration where, as here, there are allegations of concerted actions between the non-signatory and signatory. Courts have also compelled arbitration when a plaintiff asserts that a non-signatory is a third-party beneficiary of the agreement. Here, Plaintiff expressly alleges that Dentsply "obtained the benefit of" Byte's sales to consumers - sales that are made pursuant to the arbitration agreement and class action waiver present in Plaintiff's agreement with Byte.

Plaintiff cannot have her cake and eat it too. She cannot seek a refund of the purchase price that she paid to Byte pursuant to a contract she had with Byte, while at the same time ignoring the terms under which she actually purchased the product. Indeed, it would thwart the entire federal policy in favor of arbitration and render the Federal Arbitration Act itself meaningless if a parent company was forced to litigate substantially the same issues in court while the subsidiary was subject to arbitration. The arbitration agreement and class action waiver in the agreement with Byte are fully enforceable by Dentsply. This Court should stay this litigation and compel arbitration of Plaintiff's claims on an individualized basis as the parties have agreed.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Plaintiff agreed to arbitrate any disputes regarding the Byte Aligners and waived any class action.

Plaintiff – who emphasizes her status as an attorney who has been practicing for 28 years—explicitly alleges that she "entered into an installment contract with Byte." Am. Compl. at ¶ 27.

2

Plaintiff acknowledges that she – like all consumers – entered into an agreement with Byte through Byte's website.  *See id.*; *see also* Am. Compl. at ¶ 2; *see also* Declaration of Marco Santini dated April 3, 2025, Dkt. 8-2 ("Byte Decl.") at ¶ 4.  In fact, consumers must purchase the impression kit through the Byte website.  Byte Decl. at ¶ 4.  And consumers cannot purchase the Byte Aligners without first purchasing an impression kit through the Byte website.  *Id.*

As part of the impression kit purchase process, Plaintiff was required to affirmatively click the following checkbox, thereby agreeing to the Company's **Privacy Policy**, **Terms of Use**, and **Informed Consent**, before finalizing her order:

> ☐ I agree to Byte's Privacy Policy, Terms of Use, and Informed Consent.

Byte Decl. at ¶ 5.  The website does not permit Plaintiff to move forward with her purchase – and the Byte Aligners would not have been sent to Plaintiff – if she had not clicked on this checkbox indicating that she had read and consented to the contractual terms.  *Id.* at ¶ 7.  Thus, Plaintiff agreed to the above terms through a recognized click-wrap transaction, including the arbitration provision contained within the Informed Consent, and the Amended Complaint does not allege otherwise.

As reflected in the above, the Privacy Policy, Terms of Use, and Informed Consent (the "Informed Consent" is also referred to as the "Consent" or "Customer Consent") are presented to users as a hyperlink that, when clicked, take the user to another screen that displays the full text of each.  *Id.* at ¶ 6.  In addition to viewing the text, customers can also download and/or print each of the Privacy Policy, Terms of Use, and Informed Consent.  *Id.*  The Informed Consent is also available online on the Byte website, to be viewed or downloaded by customers at will.  *See* Customer Consent, Byte,

https://www.byte.com/pages/consent?srsltid=AfmBOoqKwkI4jRbUz__hb9VQdomUw8Z-

YhgCnjmmF6Kl7pGQfyIJC7jP (last updated Feb. 1, 2024).

    In the Consent, Plaintiff agreed to arbitrate any dispute regarding the Byte Aligners in

multiple, conspicuous provisions, including:

> I agree any disputes regarding the products and services offered by Byte…will be
> determined on an individual basis (and not as a class, representative, or collective
> action) by submission to arbitration pursuant to the attached Agreement to Arbitrate
> and Class Action Waiver, and not by a lawsuit led in any court, except individual
> claims within the jurisdiction of Small Claims Court.

*Id.* at ¶ 6, **Exh. A**.  Plaintiff further agreed:

> I hereby attest that I have read and agree with, and have taken time to consider the
> consequences of this important decision, the terms of Byte's Agreement to
> Arbitrate and Class Action Waiver that is attached hereto.

*Id.*  The "Agreement to Arbitrate and Class Action Waiver" is contained within the Consent, and

appears under a bolded and capitalized header that states: **AGREEMENT TO ARBITRATE**

**AND CLASS ACTION WAIVER**.  *Id.*  It outlines in detail the process to initiate arbitration,

rules to be applied, governing law, location of the arbitration, and procedures to be followed.  *Id.*

It specifically states: "By agreeing to the Consent, you agree that you are required to resolve any

claim that you may have against Byte, Straight Smile, LLC, or their affiliated dental professionals

(collectively Byte et al.) … on an individual basis in arbitration, as set forth in this Arbitration

Agreement."  *Id.*  It also states, under the bolded header "**Agreement to Binding Arbitration**

**Between You and Byte et al.**":

> You and Byte et al. agree that any dispute, claim, or controversy arising out of or
> relating to (a) the Customer Consent or the existence, breach, termination,
> enforcement, interpretation, or validity thereof, or (b) your access to or use of the
> services and products you order and/or receive from Byte et al. at any time, whether
> or before or after the date you agreed to the Consent, will be settled by binding
> arbitration between you and Byte et al. and not in a court of law.
>
> You acknowledge and agree that you and Byte et al. are each waiving the right to a
> trial by jury or to participate as a plaintiff or class member in any purported class

> action or representative proceeding. Unless both you and Byte et al. otherwise agree
> in writing, any arbitration will be conducted only on an individual basis and not in
> a class, collective, consolidated, or representative proceeding.

*Id.* Plaintiff further agreed that "the arbitrator (Arbitrator), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable." *Id.* Moreover, the "Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the terms of the Consent are unconscionable or illusory and any defense to arbitration, including waiver, delay, laches or estoppel." *Id.* The parties further expressly agreed that the Federal Arbitration Act, 9 U.S.C. § 1 et. seq. (the "FAA") governs the interpretation, enforcement, and proceedings held pursuant to the Arbitration Agreement. *Id.*

Byte registered the "Agreement to Arbitrate and Class Action Waiver" with the American Arbitration Association's publicly-available Consumer Clause Registry (the "Registry"). This means that the AAA has reviewed the arbitration provision and that it "substantially and materially complies with the due process standards of the Consumer Due Process Protocol." *See* Consumer Clause Registry, AMERICAN ARBITRATION ASSOCIATION, https://apps.adr.org/ClauseRegistryUI/faces/org/adr/extapps/clauseregistry/view/pages/clauseReg istry.jsf (last visited Apr. 2, 2025). *See* Dkt. 8-1.

Byte's business records reflect that Plaintiff purchased an impression kit on April 18, 2024, and that it was delivered on April 20, 2024. Byte Decl. at ¶ 8, **Exh. B.** Byte's records further show that Plaintiff purchased a set of Byte Aligners, which were delivered in May 2024. *Id.* at ¶ 9; **Exh. B.** Plaintiff would not have been able to purchase the impression kit or Byte Aligners unless she clicked the checkbox agreeing to the Informed Consent. *Id.* at ¶ 10. No transaction can be consummated unless the box is checked. *Id.* at ¶ 7. Thus, the delivery of the product at issue,

which Plaintiff admits in her Amended Complaint, is evidence that she clicked the box during the purchase process and thus expressly accepted the terms of the Informed Consent and its arbitration provision.

> **B.**     **Plaintiff filed this putative class action in violation of the contract to which she agreed.**

Notwithstanding the myriad provisions in which Plaintiff expressly agreed (1) to arbitrate any disputes regarding the Byte Aligners; (2) that the arbitrator has the exclusive authority to determine the arbitrability of any disputes regarding the Byte Aligners; and (3) to waive her right to bring a class action relating to the Byte Aligners, Plaintiff, as both a consumer and an officer of the court, nonetheless filed a putative class action against Byte and its parent Dentsply, seeking damages in connection with her purchase of Byte Aligners.

Specifically, on March 7, 2025, Plaintiff filed a class action complaint against Byte and Dentsply alleging claims for Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA") (Count 1), Violation of the Florida Misleading Advertising Statute § 817.41 (Count II), Breach of Implied Warranty of Merchantability (Count III), Breach of Implied Warranty of Fitness For a Particular Use (Count IV), Breach of Express Warranty (Count V), Breach of Contract (Count VI), and Unjust Enrichment (Count VII).  See Dkt. 1 ("Compl.") at ¶¶ 42-93.  The original Complaint was based on the same fundamental allegations as the Amended Complaint: Plaintiff alleged that she ***entered into a contract with Byte*** to purchase an impression kit and a set of clear Byte Aligners designed to straighten her teeth over time.  Compl. at ¶¶ 29-30; Dkt. 11 ("Am. Compl."). at ¶¶ 26-27.   After ***using the Byte products*** for a period of time, she began experiencing pain and therefore stopped using the products.  Compl. at ¶ 32; Am. Compl. at ¶ 29. She claims to have made two requests for refunds of the purchase price from Byte, but that no refund was paid.  Compl. at ¶ 33; Am. Compl. at ¶ 30.  Each of her causes of action were based on

these fundamental allegations about Byte, but were asserted against both Byte and Dentsply together, without differentiating between the two.  Compl. at ¶¶ 42-93.

Because Plaintiff expressly agreed to arbitrate any disputes related to her purchase and use of the Byte Aligners and waived her right to assert a class action, on April 3, 2025, Byte and Dentsply filed a petition to compel arbitration and to stay these proceedings.  See Dkt. 8.  In response, Plaintiff promptly dismissed her claims against Byte and filed an Amended Complaint, this time only naming Dentsply and asserting two claims: Violation of FDUPTA (Count 1), and Violation of the Florida Misleading Advertising Statute § 817.41 (Count II).  Am. Compl. at ¶¶ 40-57; *see also* Dkt. 18.[1]

In the Amended Complaint, Plaintiff again concedes that she and all customers contracted to purchase the products at issue ***from Byte*** and that "Byte also marketed the products." Am. Compl. at ¶ 2.  Both of her claims – for violation of FDUPTA and the Florida Misleading Advertising Statute, § 817.41, are based on the fundamental allegation that Plaintiff suffered economic damages when she purchased products from Byte, experienced pain that caused her to stop using the products, and was thereafter denied a refund of the purchase price by Byte.  *Id.* at ¶¶ 26-30.

Both Counts remain subject to arbitration.  However, before considering whether the claims are arbitrable, the Court should first determine whether it has personal jurisdiction over Dentsply. *See XL Funding, Inc. v. John J. Griggs, III, et al.,* No. 20-24782-CIV, 2021 WL 1976028, at *5 (S.D. Fla. Apr. 26, 2021).  Because Dentsply is not subject to general or specific personal jurisdiction here, Dentsply has filed a contemporaneous motion to dismiss for lack of

---

[1] Plaintiff has also represented that she presently does not intend to pursue arbitration against Byte. *See* Exhibit A.

personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[2]  In the event this Court finds

that it does have jurisdiction over Dentsply, the claims at issue are nonetheless subject to binding

arbitration.

## III.  ARGUMENT

### A.  The Court must stay this action in favor of arbitration.

The Federal Arbitration Act ("FAA") applies to this action.  *See* Byte Decl. at ¶ 6, **Exh. A**;

*see also Mintz & Fraade, P.C. v. Beta Drywall Acquisition, LLC,* 59 So.3d 1173, 1175 (Fla. 4th

DCA 2011) ("The FAA is applicable where an agreement evidences 'a transaction involving

commerce.'").  "The FAA 'places arbitration agreements on equal footing with all other contracts

and sets forth a clear presumption— 'a national policy'—in favor of arbitration." *VVG Real Estate*

*Invs. v. Underwriters at Lloyd's, London*, 317 F. Supp. 3d 1199, 1203 (S.D. Fla. 2018); *see also*

*Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009) (*quoting Preston v. Ferrer*, 552 U.S. 346, 353

(2008)); *Brooks v. Event Ent. Grp., Inc.*, No. 20-22495-CIV, 2020 WL 6882779, at *2 (S.D. Fla.

Nov. 23, 2020) (*quoting Hill v. Rent-A-Ctr., Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005).  Pursuant

to the FAA, a written arbitration agreement is therefore "valid, irrevocable, and enforceable, save

upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

Section 4 of the FAA provides that a party "aggrieved by the alleged failure, neglect, or

refusal of another to arbitrate under a written agreement for arbitration may petition any United

States district court…for an order directing that such arbitration proceed in the manner provided

for in such agreement."  9 U.S.C. § 4.  Under this provision, if the Court is "satisfied that the

making of the agreement for arbitration or the failure to comply therewith is not in issue," then it

---

[2] *See Schacht v. Hartford Fire Ins. Co.*, 1991 WL 171377, at *5 (N.D. Ill. Aug. 30, 1991) (holding that motion for stay pending arbitration does not waive a subsequent objection to personal jurisdiction).

"shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

The Supreme Court has recently clarified that a stay of litigation (not a dismissal) is the appropriate mechanism when arbitration is compelled. *Smith v. Spizzirri*, 601 U.S. 472, 477 (2024). The Supreme Court has also noted that "by its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *VVG*, 317 F. Supp. 3d at 1204 (citing *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985). Moreover, "[a]ny doubts concerning the scope of arbitrable issues" should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). As a result, courts "rigorously enforce" arbitration agreements. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). Here, Plaintiff unambiguously agreed to arbitrate any dispute regarding the impression kit and Byte Aligners, and staying this matter in favor of arbitration is wholly consistent with the FAA and national policy.

*First,* Plaintiff affirmatively alleges that she entered into a contract with Byte. Am. Compl. ¶ 27. In order to enter into that contract, she first clicked the box stating, "I agree to Byte's Privacy Policy, Terms of Use, and Informed Consent." Byte Decl. at ¶ 5. She could not have purchased the impression kit or Byte Aligners without checking this box and agreeing to the provisions of the Informed Consent. *Id.* at ¶¶ 4; 7; 10. By clicking on this box and completing her purchase, Plaintiff formed a "clickwrap contract." *See Salco Distributors, LLC v. iCode, Inc.*, No. 8:05 CV 642 T 27TGW, 2006 WL 449156 at *2 n. 5 (M.D. Fla. Feb. 22, 2006) ("A clickwrap contract refers to an agreement that requires a computer user to read the agreement and click 'I accept' before proceeding to the next screen or obtaining additional information."). Clickwrap contracts

with arbitration provisions are valid and enforceable in Florida. *See Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) ("In Florida and the federal circuits … clickwrap agreements are valid and enforceable contracts.") (*citing Salco*, 2006 WL 449156, at \*2); *see also Bachewicz v. JetSmarter, Inc.*, No. 18-CV-62570, 2019 WL 1900332, at \*5 (S.D. Fla. Apr. 29, 2019) (granting defendant's motion to compel arbitration based on clickwrap contract containing arbitration provision); *Brooks v. Event Ent. Grp., Inc.*, No. 20-22495-CIV, 2020 WL 6882779, at \*4 (S.D. Fla. Nov. 23, 2020) (affirming the validity of an arbitration clause in a clickwrap contract plaintiff entered into by purchasing tickets); *Laine v. JetSmarter, Inc.*, No. 18-CV-62969, 2019 WL 1900339, at \*4 (S.D. Fla. Apr. 29, 2019) (same).

*Second,* courts routinely uphold waivers of class actions in consumer contracts where the FAA applies. *See, e.g.*, *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 877 (11th Cir. 2005); *Randolph v. Green Tree Fin. Corp.-Alabama*, 244 F.3d 814, 819 (11th Cir. 2001); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1210 (11th Cir. 2011) (prohibiting challenges under Florida law to the class action waiver plaintiffs agreed to and upholding the class action waiver); *Pendergast v. Sprint Nextel Corp.,* 691 F.3d 1224, 1232 (11th Cir. 2012) (holding both the class action and arbitration clause must be enforced). This is because the FAA – and the deference that is to be provided to arbitration agreements – preempts any state law that would undermine the national policy in favor of arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011).

Here, it is indisputable that (1) Plaintiff entered into a contract regarding the Byte Aligners, (2) the contract requires arbitration, and (3) Plaintiff waived her right to pursue a class action. Under Section 4 of the FAA, "the making of the agreement for arbitration…is not in issue" and

this Court is therefore required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *See* 9 U.S.C. § 4. This action must be stayed.

**B.        Plaintiff can be compelled to arbitrate her claims against Dentsply.**

Plaintiff's filing of the Amended Complaint to drop Byte and proceed only against Dentsply is a misguided attempt to circumvent the binding agreements she made to arbitrate and waive her right to bring a class action. Dentsply anticipates Plaintiff will argue that her agreements are not applicable because Dentsply is not a signatory to the arbitration agreement. But Plaintiff will be wrong. The Eleventh Circuit expressly disapproves of a plaintiff "attempting an 'end run' to avoid their agreement to arbitrate" by adding a parent company and then arguing it is not a signatory to the agreement. *Physician Consortium Services, LLC v. Molina Healthcare, Inc.,* 414 Fed. Appx. 240, 242, 243 (11th Cir. 2011); *see also Morselife Foundation, Inc. v. Merrill Lynch Bank & Trust Co., FSB,* No. 09-81143-civ, 2010 WL 2889932 (S.D. Fla. July 21, 2010) (agreeing that dropping a defendant and filing an amended complaint against a non-signatory was a "tactical ploy" to try to avoid a binding arbitration agreement and ordering arbitration). Moreover, it would thwart the entire federal policy in favor of arbitration and render the arbitration itself meaningless if a parent company was nonetheless forced to litigate substantially the same issues in court. To that end, courts have recognized that a non-signatory may compel arbitration in a number of situations, including through application of equitable estoppel and third-party beneficiary principles.

**1.        Plaintiff is equitably estopped from arguing that her claims against Dentsply are not arbitrable.**

"Equitable estoppel allows a non-signatory to enforce the provisions of a contract against a signatory in two circumstances." *Gunson v. BMO Harris Bank, N.A.,* 43 F.Supp.3d 1396, 1401 (S.D. Fla. 2014). It applies when the plaintiff "relies on the terms of the contract to assert his or

her claims against the non-signatory." *Id.*  "In other words, arbitration is appropriate when the signatory's claim against a non-signatory 'makes reference to' or 'presumes the existence of' the agreement." *Id.*  It also applies when the plaintiff raises allegations of concerted misconduct by a signatory and non-signatory. *Id.* "In other words, equitable estoppel precludes a party from 'trying to have his cake and eat it too' – that is, using certain provisions of the contract to their benefit to help establish their claim while also attempting to avoid the burdens of the other provisions." *Id.*

Plaintiff's claims are quintessential examples of both circumstances.  Her Amended Complaint is no different than the original Complaint in which she brought the same claims against both Byte and Dentsply as if they were one entity.  The Amended Complaint, just like the original Complaint, is fully grounded in and dependent on her agreement to purchase the Byte products from Byte.  Both of her claims against Dentsply – for violation of FDUPTA and the Florida Misleading Advertising Statute, § 817.41, are fundamentally based on the theory that she suffered economic damages when she purchased products from Byte, experienced pain that caused her to stop using the products, and was thereafter denied a refund of the purchase price by Byte.  *Id.* at ¶¶ 26-30.  To be clear, despite dressing up her claim in legalese and statutory language, she is seeking to recover the purchase price that she paid to Byte based on the allegation that she was misled about the product that she received from Byte pursuant to the agreement she entered into with Byte and that she has been harmed because Byte would not give her a refund.

First, in Count I, violation of FDUPTA, Plaintiff seeks to recover her "actual damages." Although not defined in the legal claim, Plaintiff is clear in the body of her Amended Complaint that she is seeking to recover the purchase price that she paid to Byte.  Indeed, under the header "**Plaintiff Paula J. Phillips Suffered Damages**," Plaintiff alleges that she *entered a contract with Byte* – not Dentsply – to purchase a set of clear aligners and related products.  *Id.* at ¶¶ 27-28.  She

alleges that she did so by ***accessing Byte's website*** in Florida, which she alleges is www.Byte.com. *Id.* at ¶ 27.  She thereafter ***received an impression kit from Byte*** and "***mailed it back to Byte***" – not Dentsply.  *Id.* at ¶ 26.  She then "***paid Byte***" for the aligners and a "*Byte* 'protection plan'" and "***entered into an installment contract with Byte*** to make the payments."  *Id.* at ¶ 27.  When she determined she was not happy with the products, she "inquired about a ***refund from Byte***" and went to "***Byte's website***," which she alleges "advised that due to the nature of the product" was unavailable.  *Id.* at ¶ 30.  After she "learned that ***Byte had stopped selling the Products***," she "***contacted Byte***" to request a full refund of the purchase price but "none was ever paid."  *Id.*

Thus, the "actual damages" to which she believes she is entitled is the amount of money she paid to Byte under the contract.  Moreover, Plaintiff defines the class as "All persons in Florida who purchased a Byte Aligner System and Impression kit."  *Id.* at ¶ 32.  And she concedes that *all customers* contracted to purchase the products from Byte.  *Id* at ¶ 2.  Plaintiff should be estopped from arguing that the FDUPTA claim is not arbitrable when the entire claim references, depends on, and is related to the existence of the agreement with Byte.  *See Ayala-Rodriguez v. Falic Fashion Group LLC,* Case No. 18-62034-CIV, 2019 Wl 13216292 at *8 (S.D. Fla. Mar. 6, 2019) (the Court "applied equitable estoppel to nonsignatories when the claims against the defendants relied on a single set of factual allegations"); *see also Physician Consortium,* 414 Fed.Appx. at 242 (when the claims against the parent company and its subsidiary are based on the same facts, a court may refer claims against the parent to arbitration even if it is not a formal party to the agreement).

Second, although Plaintiff does not demand "actual damages" in Count II, she nonetheless also bases this claim on her purchase of the products from Byte.  She further alleges concerted action between Dentsply and Byte.  Specifically, she alleges that Dentsply made certain statements

about Byte and the Byte products in an effort to get "the public to enter into obligations" to purchase the products from Byte or increase the consumption or use of the products.  Am. Compl. at ¶ 52.  She claims that when Dentsply referenced its acquisition of the Byte subsidiary in corporate documents and press releases, it was promoting the Byte products as safe and effective and that Dentsply "heralded" Byte as a "leading direct-to-consumer, doctor-directed clear aligner company."  *Id*. at ¶¶ 2; 8.  Plaintiff's claims are also heavily reliant on allegations relating to *Byte's* own statements about the products, and Dentsply's allegedly implicit endorsement of same given the presence of its logo on some of them.  *Id*. at ¶¶ 9; 10; 11.  Moreover, Plaintiff alleges in Count II that Dentsply obtained the benefit of the "associated sales" of the product – sales which Plaintiff is crystal clear were made *only by Byte* and were made based on Byte's marketing of the products.  *Id*. at 53.  Thus, in addition to being premised on the contract with Byte, Plaintiff also alleges concerted misconduct by both Byte and Dentsply to increase sales of the products.  Equitable estoppel applies, and this action must be stayed pending arbitration of her claims.

### 2.    Plaintiff alleges that Dentsply is a third-party beneficiary of the contract between herself and Byte.

A non-signatory may also compel arbitration where the Plaintiff alleges that it is a third-party beneficiary of the contract.  *Calcaterra v. Baptist Health South Florida, Inc.,* 733 F.Supp.3d 1349, 1354 (S.D. Fla. 2024) (ordering arbitration even though only one of the defendants was a signatory to the arbitration).  Here, Plaintiff expressly alleges that Dentsply "was named in and/or obtained the benefits of [the] misleading advertising and associated sales of the Products referenced in the misleading advertising."  Am. Compl. at ¶ 53.  To be clear, Plaintiff is alleging that Dentsply, a *third party* to the agreement between herself and Byte, *benefitted* from the sales of the products, which she agrees were all sold pursuant to a contract with Byte.  Plaintiff cannot have her cake and eat it too.  She cannot claim in one breath that Dentsply is a beneficiary of the

14

sale of the products from Byte to herself and then also argue that the terms of the agreement covering that sale do not apply here.  This action must be stayed pending arbitration of Plaintiff's claims.

> ### C.   Even if Plaintiff raises issues relating to arbitrability of her claims, it is the arbitrator – not the Court – that decides the issue.

To the extent Plaintiff argues that her claims are outside the scope of the arbitration provision, that is an issue that must be considered by the arbitrator in the first instance, not the Court.

In addition to agreeing to arbitrate the merits of a dispute, "parties may agree to arbitrate the gateway questions of arbitrability including the scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (citing *Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 68-69 (2010).  To that end, "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (internal citations omitted) (emphasis in original).  A provision that delegates the question of arbitrability to the arbitrator is referred to as a "delegation provision."  *Jones*, 866 F.3d at 1264.

Delegation provisions are enforced when there is clear and unmistakable language showing that the parties intended for gateway issues of arbitrability to be decided by the arbitrator, and not the court.  *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014) (citing *Rent-A-Ctr.,* 561 U.S. at 79-80).  Language in an arbitration provision stating that disputes relating to the existence, validity, and enforceability of the agreement shall be resolved by arbitration have been held to be clear and unmistakable language delegating such matters to the arbitrator.  *Id.* at 1243, 1246; *see also Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1145, 1147-48 (11th Cir. 2015).

The agreement here contains multiple provisions making clear that the arbitrator – not the court – has the sole authority to determine questions of arbitrability and scope. Specifically, Plaintiff agreed that "the arbitrator (Arbitrator), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable." Plaintiff further agreed that the "Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the terms of the Consent are unconscionable or illusory and any defense to arbitration, including waiver, delay, laches or estoppel." These are enforceable delegation provisions. Thus, even if Plaintiff argues that the agreement is somehow invalid or unenforceable – which argument would be baseless – such arguments would have to be presented to and decided by the arbitrator, nor the court.[3] *See Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1310 (11th Cir. 2022) (The Court's precedents make clear that, when an appeal presents a delegation agreement and a question of arbitrability, we stop. We do not pass go."). For all of these reasons, this matter must be stayed in favor of arbitration.

---

[3] Although not an issue for this Court, Plaintiff's claims fall within the scope of the arbitration agreement. Plaintiff expressly agreed that "any disputes regarding the products and services offered by Byte" would be subject to arbitration, as would "any dispute, claim, or controversy arising out of or relating to (a) the Customer Consent or the existence, breach, termination, enforcement, interpretation, or validity thereof, or (b) [Plaintiff's] access to or use of the services and products you order and/or receive from Byte et al. at any time, whether or before or after the date you agreed to the Consent." All of her claims relate to the products and services she received from Byte. This is sufficient to compel arbitration. *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1327 (S.D. Fla. 2016) (upholding the arbitration provision for all claims and controversies "concerning or arising from" the plaintiff's relationship with the defendant.); *Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1326 (S.D. Fla. 2009); *Day v. Persels & Assocs., LLC*, No. 8:10CV-2463-T-TGW, 2015 WL 413224, at *89 (M.D. Fla. Jan. 30, 2015).

IV.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court compel Plaintiff

to arbitrate her claims and stay this action pending resolution of any arbitration filed by Plaintiff.

Respectfully submitted,

**POLSINELLI PC**

By: _____ */s/ Daniel Mateo* _____
DANIEL MATEO (FL #1040158)
315 S. Biscayne Boulevard, Suite 400
Miami, FL  33131
Telephone:     (305) 921-1802
Facsimile:      (305) 921-1801
dmateo@polsinelli.com

THOMAS J. YOO (*pro hac vice* to be filed)
2049 Century Park East, Suite 2900
Los Angeles, CA  90067
Telephone:     (310) 556-1801
tyoo@polsinelli.com

AMY MCVEIGH (*pro hac vice* to be filed)
1717 Arch Street, Suite 2800
Philadelphia, PA  19103
Telephone:     (215) 267-3001
amcveigh@polsinelli.com

*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this petition in a good faith effort to resolve the issues but has been unable to resolve the issues.

_/s/ Daniel Mateo_
DANIEL MATEO

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically filed on May 9, 2025 with the Clerk of the Court by using the CM/ECF system thereby sending a notice of electronic filing to all counsel of record.

*/s/ Daniel Mateo*
DANIEL MATEO
