**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:25-cv-21074-GAYLES-GOODMAN**

PAULA J. PHILLIPS, individually and on
behalf of all others similarly situated,

        Plaintiff,

   vs.

DENTSPLY SIRONA INC.

        Defendant.

_____/

**PLAINTIFF PAULA J. PHILLIPS'S AMENDED RESPONSE TO DEFENDANT**
**DENTSPLY SIRONA INC.'S PETITION TO COMPEL ARBITRATION AND STAY**

    Plaintiff Paula J. Phillips, individually and on behalf of others similarly situated, files this response in opposition to Defendant Dentsply Sirona Inc.'s ("Dentsply") Petition to Compel Arbitration and Stay Proceedings (D.E. 21). This is amended response is filed in accordance with the Court's order at D.E. 47.

**PRELIMINARY STATEMENT**

    There was never an agreement between Paula Phillips and Dentsply to arbitrate. Similarly, Ms. Phillips never waived her right to file a class action against Dentsply. Dentsply pins its motion on an online "Informed Consent," which Ms. Phillips purportedly accepted when she clicked an online box while buying her impression kit and aligners from Straight Smile, LLC d/b/a Byte ("Byte") on Byte's website. However, that online form never mentions Dentsply. Given that "arbitration is a matter of consent," *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002), and Ms. Phillips did not consent to arbitrate against Dentsply, the motion should be summarily denied.

Unable to overcome the form's plain terms, Dentsply turns to several alternative theories to compel arbitration, which fail. Equitable estoppel does not apply because the arbitration clause is limited to disputes between the signatories, Dentsply is not a signatory, and the doctrine cannot alter the contract's terms. *See Kroma Makeup EU, LLC ("Kroma") v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1356 (11th Cir. 2017). Additionally, the "*sine qua non* of an appropriate situation for applying equitable estoppel" is lacking – "plaintiff's actual dependance on the underlying contract in making out the claim[.]" *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002). Ms. Phillips does not seek to enforce against Dentsply any terms, obligations, or duties of her purchase contract with Byte. She brings independent statutory claims. She is not trying to "have her cake and eat it too." (D.E. 21 at 7). She wants nothing to do with the cake. And Dentsply is not a third-party beneficiary because the "Informed Consent" expresses no intent to benefit Dentsply.

Dentsply argues that this Court should not even be deciding the question of whether Ms. Phillips may bring this case in a court of law. But courts always retain jurisdiction to determine whether two parties agreed to arbitrate. Because no such agreement exists between the only two parties to this case – Ms. Phillips and Dentsply – the motion should be denied.

## FACTS

### A. Ms. Phillips's Statutory Claims Against Dentsply

Paula J. Phillips brings this action on behalf of herself and other Florida consumers against Dentsply for damages under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, et seq., and the Florida Misleading Advertising Statute, Fla. Stat. § 817.41. She alleges that Dentsply falsely promoted Byte dental aligners and impression kits as "doctor-directed," safe, and effective, when it knew they were not. (D.E. 11 ¶¶ 1-14).

A separate entity – Straight Smile LLC d/b/a "Byte," a wholly-owned subsidiary of Dentsply – contracted with Ms. Phillips and others to sell the Byte aligners. (*Id.*). Ms. Phillips initially sued Byte together with Dentsply. (D.E. 1). But she has since voluntarily dismissed her claims against it, which she does not presently intend to pursue in arbitration. (D.E. 13, 18, 21-1). The parties agree that Straight Smile, LLC d/b/a Byte and Dentsply Sirona, Inc. are separate and distinct entities and Byte's actions cannot be imputed to Dentsply. (D.E. 20 at 15, 16). For the same reason, Dentsply may not blur the distinction between it and Byte to get the benefit of an arbitration agreement that it never had with Ms. Phillips.

Ms. Phillips's claims are focused exclusively on Dentsply for its role in making false and misleading promotional statements about this unsafe and ineffective dental product. Separate and apart from Byte, Dentsply itself promoted the aligners through a coordinated campaign. (D.E. 11 ¶¶ 8-14). The Amended Complaint cites to:

- *Dentsply's* January 4, 2021, press release published by *Dentsply* announcing its acquisition of Byte that, among other things, described Byte as a "leading direct-to-consumer, doctor-directed clear aligner company" and heralded Byte as boasting "a leadership position in the rapidly growing direct-to-consumer, doctor-directed clear aligner market" (*id.* ¶¶ 8-9);

- *Dentsply's* January 4, 2021, social media post announcing that the Byte acquisition meant it would *"strengthen our strong connection to dental professionals* and meet the needs of people around the world by providing them an opportunity to improve their smiles," and directing consumers to Byte's own social media account (*id.* ¶ 10);

- *Dentsply's* misleading promotional claim on Byte's website where the *Dentsply* logo appears next to the claim that "we work with a nationwide network of licensed orthodontists and

dentists who prescribe every treatment plan of our invisible aligners to deliver professional results"
(*id.* ¶ 13); and

- *Dentsply's* misleading promotional claim on Byte's website that Byte aligners are, "Backed by Defendant *Dentsply Sirona*, the world's largest manufacturer of professional dental products." (*id.* ¶ 14).

### B.  The Purported Arbitration Agreement that Never Mentions Dentsply

There is no agreement between Ms. Phillips and Dentsply, and thus, there is  neither an arbitration clause nor class action waiver clause in any contract between these two parties. Instead, Dentsply points to an online "Informed Consent." (D.E. 21 at 8). Ms. Phillips purportedly accepted this "Informed Consent" form when she clicked an online box while buying her impression kit and aligners from Byte on Byte's website. (*Id.*).

However, Dentsply glosses over the critical language in the form regarding *who* it is intended to cover. The form includes language to the effect that the consumer has read and agrees with "the terms of Byte's **Agreement to Arbitrate and Class Action Waiver** that is attached hereto":

> **Agreement to Arbitrate and Class Action Waiver**
>
> I hereby attest that I have read and agree with, and have taken time to consider the consequences of this important decision, the terms of Byte's Agreement to Arbitrate and Class Action Waiver that is attached hereto. I agree any dispute regarding the products and services offered by Byte and/or affiliated dental professionals, including but not limited to medical malpractice disputes, will be determined on an individual basis (and not as a class, representative, or collective action) by submission to arbitration pursuant to the attached Agreement To Arbitrate and Class Action Waiver, and not by a lawsuit led in any court, except individual claims within the jurisdiction of Small Claims Court. I understand that to initiate the arbitration, I must send a Demand for Arbitration pursuant to the agreement in the attached Agreement to Arbitrate Form. I agree that the arbitration shall be conducted by a single, neutral arbitrator selected by the parties and shall be resolved using the rules of the American Arbitration Association.

(D.E. 8-3).[1] The above clause refers the reader to the "**AGREEMENT TO ARBITRATE AND CLASS ACTION WAIVER**," that is "attached hereto" or "attached" further down the form. (*Id.*).

---

[1] References to the form are to the copy at D.E. 8-3. Dentsply also filed a copy at D.E. 8-1, but the two are substantially the same and Dentsply makes no distinction between the two in its motion.

In turn, this next clause plainly states that the arbitration and class action waiver agreement is between "you," i.e., Ms. Phillips, and "Byte et al.," which the form defines as "Byte, Straight Smile, LLC, or their affiliated dental professionals (collectively Byte et al.)":

## AGREEMENT TO ARBITRATE AND CLASS ACTION WAIVER

By agreeing to the Consent, you agree that you are required to resolve any claim that ==you may have against Byte, Straight Smile, LLC, or their affiliated dental professionals (collectively Byte et al.),== including but not limited to medical malpractice disputes, will be determined on an individual basis in arbitration, as set forth in this Arbitration Agreement. This will preclude you from bringing any class, collective, or representative action against ==Byte et al.,== and also preclude you from participating in or recovering relief under any current or future class, collective, consolidated, or representative action brought against ==Byte et al.== by someone else.

(*Id*.).

Critically, the word "Dentsply" does not appear in the "AGREEMENT TO ARBITRATE AND CLASS ACTION WAIVER." It never appears in the definition of "Byte et al." Nor does it appear anywhere else in the form. Nor does Dentsply fit the description of any of the terms included within the definition of "Byte et al." It is not "Byte," or "Straight Smile, LLC." Nor is it "an affiliated dental professional." It does not fit the plain meaning of the term or its definition elsewhere in the form, which refers to "dental professionals responsible for my dental care during the course of my participation in the Byte Aligner Program ('Dental Professionals')." (*Id*.).

Every subsequent reference to the parties subject to this "Informed Consent" form is to either "you" or "Byte et al.," neither of which include Dentsply. The subsequent relevant provisions are as follows:

- The clause providing for binding arbitration refers to "You and Byte et al.," not Dentsply:

**Agreement to Binding Arbitration Between You and Byte et al.**

==You and Byte et al.== agree that any dispute, claim or controversy arising out of or relating to (a) the Customer Consent or the existence, breach, termination, enforcement, interpretation or validity thereof, or (b) your access to or use of the services and products you order and/or receive from ==Byte et al.== at any time, whether before or after the date you agreed to the Consent, will be settled by binding arbitration between ==you and Byte et al.,== and not in a court of law.

(*Id*.).

- The clause regarding waiver of jury trial refers to "you and Byte et al.," not Dentsply:

> You acknowledge and agree that you and Byte et al. are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding. Unless both you and Byte et al. otherwise agree in writing, any arbitration will be conducted only on an individual basis and not in a class, collective, consolidated, or representative proceeding. However, you and Byte et al. each retain the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights.

(*Id.*).

- The clause regarding the location and procedure for arbitration refers to "you and Byte et al.," not Dentsply:

**Location and Procedure**

> Unless you and Byte et al. otherwise agree, the arbitration will be conducted in the county where you reside. If your claim does not exceed $10,000, then the arbitration will be conducted solely on the basis of documents you and Byte et al. submit to the Arbitrator, unless you request a hearing or the Arbitrator determines that a hearing is necessary. If your claim exceeds $10,000, your right to a hearing will be determined by the AAA Rules. Subject to the AAA Rules, the Arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.

(*Id.*).

- The clause regarding enforcement of the arbitrator's decision and claims for attorney's fees refers to "Byte et al.," not Dentsply:

**Arbitrator's Decision**

> The Arbitrator will render an award within the time frame specified in the AAA Rules. Judgment on the arbitration award may be entered in any court having competent jurisdiction to do so. The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. An Arbitrator's decision shall be final and binding on all parties. An Arbitrator's decision and judgment thereon shall have no precedential or collateral estoppel effect. If you prevail in arbitration you will be entitled to an award of attorneys' fees and expenses, to the extent provided under applicable law. Unless the Arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), Byte et al. will not seek, and hereby waives all rights Byte et al. may have under applicable law to recover, attorneys' fees and expenses if Byte et al. prevails in arbitration.

(*Id.*).

- The clause regarding payment of arbitration fees refers to "Byte et al.," not Dentsply:

**Fees**

> Your responsibility to pay any AAA filing, administrative and arbitrator fees will be solely as set forth in the AAA Rules. However, if your claim for damages does not exceed $75,000, Byte et al. will pay all such fees, unless the Arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)).

(*Id.*).

- And the clause regarding changes to the arbitration agreement refers to "Byte et al.," and service of written notice upon "Straight Smile, LLC," not Dentsply:

**Changes**

If Byte et al. changes this Arbitration Agreement after the date you first agreed to the Consent (or to any subsequent changes to the Consent), you may reject any such change by providing Byte et al. written notice of such rejection within 30 days of the date such change became effective, as indicated in the "Effective" date above. This written notice must be provided either (a) by mail or hand delivery to our registered agent for service of process, c/o Straight Smile, LLC (available at www.sos.ca.gov), or (b) by completing a support ticket. In order to be effective, the notice must include your full name and clearly indicate your intent to reject changes to this Arbitration Agreement. By rejecting changes, you are agreeing that you will arbitrate any dispute between you and Byte et al. in accordance with the provisions of this Arbitration Agreement as of the date you first agreed to the Consent (or to any subsequent changes to the Consent)

(*Id*.).

Thus, the form extends no further than the parties specifically referenced therein – Ms. Phillips and Straight Smile, LLC, or "Byte" and Byte's affiliated dental professionals. The form could have included Dentsply or, at least, referred to it, but it did not.

## ARGUMENT

### I.   There is no binding arbitration agreement between Ms. Phillips and Dentsply.

The threshold question is whether Ms. Phillips and Dentsply had an agreement to arbitrate disputes between them. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985); *E.E.O.C.*, 534 U.S. at 294; *Lawson v. Life of the S. Ins. Co*., 648 F.3d 1166, 1167-68 (11th Cir. 2011). To determine whether Ms. Phillips and Dentsply had an agreement to arbitrate, the Court must look at the plain terms of the form invoked by Dentsply. *E.E.O.C.*, 534 U.S. at 294. *See also Cordoba v. DIRECTV, LLC*, 801 Fed. Appx. 723, 725 (11th Cir. 2020) (arbitration agreements must be interpreted consistent with "the clear intent of the parties ... [and] the plain language of the contract....").

In interpreting the contract's terms, the Court is instructed to follow the applicable state law's principles of contract formation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Lawson*, 648 F.3d at 1170-71. But as set forth herein, on the relevant issues of contract

law, there is no discernible difference between Florida law and the various other state laws applied in the cited federal decisions. *See Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Florida, Inc.*, 158 So. 3d 644, 646 (Fla. 3d DCA 2014). *See also Kroma*, 845 F.3d at 1356 (denying arbitration under Florida law); *Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1214 (11th Cir. 2021) ("Florida courts also emphasize that whether a dispute is subject to arbitration depends primarily on 'the plain language of the arbitration provision and contract itself.'") (citing *Jackson v. Shakespeare Foundation, Inc.*, 108 So. 3d 587, 593 (Fla. 2013)).

The plain terms of the arbitration clause do not provide that Ms. Phillips agreed to arbitrate with Dentsply. Nor do they provide that she waived the right to file a class action against Dentsply. "Dentsply" does not appear anywhere in the form. Rather, the arbitration agreement is between "you," i.e., Ms. Phillips, and "Byte et al." And "Dentsply" does not appear in the definition of "Byte et al." or fit the description of any of the terms included within the meaning of "Byte et al." It is not "Byte," "Straight Smile, LLC," or "an affiliated dental professional." That is the end of the inquiry and requires denial of the motion.

As the Eleventh Circuit has noted, "if the language of the arbitration provision is party specific and the description of the parties does not include the nonsignatory, this Court's inquiry is at an end, and we will not permit arbitration of claims against the nonsignatory." *Corp. Am. Credit Union v. Herbst*, 397 Fed. Appx. 540, 542 (11th Cir. 2010) (quotations omitted). *See also Kroma*, 845 F.3d at 1356 (denying arbitration where "Kroma EU never consented to arbitrate any disputes between it and the Kardashians or any other non-signatory," and "[a]ll it consented to arbitrate were disputes between it and the other party, which was Tillett").

*Lawson* is on point. The Lawsons entered a loan agreement with a car dealership, which led them to enter a separate credit life insurance contract with Life of the South. 648 F.3d at 1168.

The Lawsons filed a class action against Life of the South for wrongdoing with respect to the life insurance policy. *Id*. Life of the South moved to compel arbitration based on an arbitration clause in the loan agreement between the Lawsons and the car dealership. *Id*. The court denied it because the clause did not include Life of the South: "Life of the South is neither a 'you' nor a 'we.' Instead, in pronoun terms, Life of the South is an unmentioned 'it,' and the face of the arbitration clause does not show an intent to give 'it' the right to compel arbitration." *Id*. at 1171-72.

*Lavigne v. Herbalife, Ltd*., 967 F.3d 1110 (11th Cir. 2020), is also analogous. The plaintiffs entered into distributor agreements with Herbalife. *Id*. at 1114. They attended a series of events put on by Herbalife's top distributors. *Id*. They filed a class action against these top distributors alleging that the events were part of a scheme to defraud the plaintiffs. *Id*. at 1115. The top distributors moved to compel arbitration based on arbitration clauses in the distributor agreements, which the court denied because the plain terms of those clauses do not include the top distributors as parties: "The arbitration clauses at issue are agreements between the signatory and Herbalife, including Herbalife's subsidiaries, affiliates, officers, directors, agents, employees, predecessors in interest, heirs, successors, and assigns. Other Herbalife distributors are not included in any of these categories, and the top distributors do not argue otherwise." *Id*. at 1117-18.

A simple application of *Lawson* and *Lavigne* requires denial of Dentsply's motion. As in *Lawson*, Dentsply "is an unmentioned 'it,' and the face of the arbitration clause does not show an intent to give 'it' the right to compel arbitration." 648 F.3d at 1171-72. And as in *Lavigne*, the form refers to "Byte et al.," but Dentsply "is not included in any of [the] categories," 967 F.3d at 1118, of parties that qualify as "Byte et al." Thus, the motion must be denied because the plain terms of the form do not entitle Dentsply to compel arbitration.

Florida state court decisions compel the same result. *See Marcus v. Florida Bagels, LLC*, 112 So. 3d 631, 633 (Fla. 4th DCA 2013) ("An obligation to arbitrate is based on consent, and for this reason a non-signatory to a contract containing an arbitration agreement ordinarily cannot compel a signatory to submit to arbitration.") (quotations omitted); *Koechli v. BIP Intern., Inc.*, 870 So. 2d 940, 943 (Fla. 1st DCA 2004) ("Therefore, a non-signatory to a contract containing an arbitration agreement ordinarily cannot compel a signatory to submit to arbitration."); *Roman v. Atl. Coast Constr. & Dev., Inc.*, 44 So. 3d 222, 224 (Fla. 4th DCA 2010) ("A party cannot be required to submit to arbitration any dispute which he has not agreed so to submit and for this reason a non-signatory to a contract containing an arbitration agreement ordinarily cannot compel a signatory to submit to arbitration.") (quotations and citations omitted and cleaned up).

Dentsply devotes a lot of attention to the fact that Ms. Phillips initially sued Byte but has since voluntarily dismissed her claims against it and amended her complaint. (D.E. 21 at 6, 12, 16, 17). But this is a red herring. Ms. Phillips amended her complaint with Dentsply's written consent pursuant to Rule 15 and jointly stipulated with Byte pursuant to Rule 41 to voluntarily dismiss her claims against it. (D.E. 13, 18). No matter how hard Dentsply tries, the case's procedural history cannot change the plain terms of the arbitration clause.

## II. Dentsply's Equitable Estoppel and Third-Party Beneficiary theories fail.

### A. Equitable Estoppel

Dentsply turns to the doctrine of equitable estoppel. However, as the Eleventh Circuit recently explained in a case applying Florida law:

> Under that doctrine, a defendant who is a non-signatory to an agreement containing an arbitration clause can force arbitration of a signatory's claims when "the signatory ... ***must rely on the terms of the written agreement in asserting its claims against the nonsignatory***...."

*Kroma*, 845 F.3d at 1354 (quoting *Allscripts*, 158 So.3d at 646) (emphasis added). Moreover, as *Kroma* explained, equitable estoppel has a narrow application and cannot be used to override the plain terms of the contract:

> A non-signatory, however, cannot invoke the doctrine to compel arbitration of claims that are not within the scope of the arbitration clause. Equitable estoppel does not allow a nonsignatory to an agreement to alter and expand an arbitration clause that would not otherwise cover the claims asserted.

*Id.* Thus, Dentsply must show two things to persuasively argue equitable estoppel. It "must show both that [the plaintiff] is relying on the agreement to assert its claims against them **and** that the scope of the arbitration clause covers the dispute." *Id*. (citing *Koechli*, 870 So. 2d at 940) (emphasis added). Dentsply fails both aspects of this "two-step framework[.]" *Id*.

### 1. The scope of the arbitration clause does not cover this dispute.

Dentsply's reliance on equitable estoppel fails because Dentsply fails to show "that the scope of the arbitration clause covers the dispute." *Kroma*, 845 F.3d at 1354. As *Kroma*, which applies Florida law, explains: "If the [movants] are not considered 'parties' to the agreement within the scope of the arbitration clause, they cannot use equitable estoppel to compel arbitration of the claims, even if the doctrine were otherwise applicable in this case." *Id*. at 1355.

This rule applies here. As explained above, and as in *Kroma*, the arbitration clause at issue is limited to disputes between the signatories to it, that is, "you," (Ms. Phillips) and "Byte et al.," which does not include Dentsply. 845 F. 3d at 1354. Moreover, when an arbitration clause is limited to the signatories thereto, the doctrine is limited to non-signatory "officers and agents of a signatory," who "had themselves received rights and taken on obligations under the agreement." *Id*. at 1355 (citations and quotations omitted). This "agent, officer, or director relationship is critical to the exception" under Florida law. *Id.* There can be no dispute that Dentsply fails to meet this narrow circumstance. Dentsply does not even suggest that it is an officer or agent of Byte. In

11

fact, it emphasizes the opposite in its companion personal jurisdiction motion. (D.E. 20 at 22).[2] Nor does Dentsply argue that it "received rights" or has "taken on obligations under the agreement" between Ms. Phillips and Byte. *Kroma, supra*. Dentsply's reliance on the equitable estoppel doctrine fails at the outset without the need for further analysis. The doctrine fails at the first step of the "two-step framework[.]" *Id*. at 1354.

Dentsply's reliance on Eleventh Circuit authority upholding class action waivers in arbitration agreements (D.E. 21 at 10) – *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868 (11th Cir. 2005); *Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814 (11th Cir. 2001); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205 (11th Cir. 2011); and *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224 (11th Cir. 2012) – is misplaced. In those cases, the party seeking to enforce the arbitration agreement and the accompanying class action waiver was a party to the underlying agreement. Just as Ms. Phillips did not agree to arbitrate with Dentsply, she never waived her right to file a class action against Dentsply. *See Garn v. South Florida Stadium LLC*, No. 24-25087-CV, 2025 WL 1279071, at *5 (S.D. Fla. Mar. 26, 2025) ("For the same reason that Defendants cannot compel Garn to arbitrate based on an agreement they are not party to, Defendants similarly cannot strike Garn's class allegations based on the class waiver clause contained in the same agreement.").

**2. Ms. Phillips is not seeking to enforce any obligations under her contract with Byte.**

As set forth in *Kroma*, the court need not even proceed to the next step in the analysis given the arbitration clause's plain terms. But even if it did, Dentsply's reliance on equitable estoppel would still fail because Ms. Phillips's claims do not depend on her contract with Byte.

---

[2] Contrast this case with Dentsply's cited case *Morselife Foundation, Inc. v. Merrill Lynch Bank & Trust Co., FSB*, No. 09-81143-civ, 2010 WL 2889932, at *3-*4 (S.D. Fla. July 21, 2010), where the court compelled arbitration. The plaintiff sued the defendant for the acts of two parties who were indisputably "agents of Merrill Lynch," and the plaintiff had an arbitration agreement with Merrill Lynch. *Id*. at *3. Here, the parties agree that there is no agency relationship.

As the Eleventh Circuit has explained, "[t]he plaintiff's actual dependance on the underlying contract in making out the claim against the nonsignatory defendant is … always the *sine qua non* of an appropriate situation for applying equitable estoppel." *In re Humana*, 285 F.3d at 976.[3] "The purpose of the doctrine is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration." *Id.* (quotations omitted and cleaned up). The "plaintiff's claims must directly, not just indirectly, be based on the contract containing the arbitration clause in order for equitable estoppel to compel arbitration of those claims." *Lawson*, 648 F.3d at 1172. It is not enough that the plaintiff's complaint "refer to" the contract with an arbitration clause. *Id*. at 1173.

Florida state courts follow the same rule. In *Allscripts*, upon which the Eleventh Circuit based its decision in *Kroma*, the court held, "A plaintiff's dependence on the contract in this sense means more than that plaintiff would not own the product except for the contract: 'A simple but-for relationship does not constitute the actual dependence on the underlying contract that equitable estoppel requires.'" 158 So. 3d at 647 (quoting *Bailey,* 705 F.3d at 1321–22). *See also Lawson*, 648 F.3d at 1174 ("There is to be sure, a 'but-for' relationship between the loan agreement, which created the debt obligation, and the credit life insurance policy that gave rise to the Lawsons' claims against Life of the South. But that alone is not enough to warrant equitable estoppel.").

---

[3] *In re Humana* was reversed in part on a different issue, not presented here, of whether the plaintiffs' federal RICO claims were arbitrable. *See PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 403 (2003). Post-*Book*, the portion of the opinion relevant here remains persuasive. *See Bailey v. ERG Enterprises, LP*, 705 F.3d 1311, 1320 (11th Cir. 2013).

The Eleventh Circuit's decision in *In re Humana* is also instructive. 285 F.3d at 973. Relying on equitable estoppel, certain HMOs moved to compel arbitration of claims by doctors with whom they did not have arbitration agreements. *Id.* The court rejected the argument because the doctors were seeking damages pursuant to a statute – the federal RICO Act – independent of any contracts that contained arbitration agreements:

> Here, the doctors' suit does not rely upon or presume the existence of an underlying contract; the RICO claims in this case are based on a statutory remedy Congress has provided to any person injured as a result of illegal racketeering activities. This remedy stands apart from any available remedies for breach of contract, and clearly is not intimately founded in and intertwined with the underlying contract obligations.

*Id.* at 976-77. This is consistent with Florida law, as evidenced by the multiple Florida decisions citing *In re Humana* with approval. *See Qubty v. Nagda*, 817 So. 2d 952, 957 (Fla. 5th DCA 2002) (following *In re Humana* to hold that defendant was not entitled to enforce arbitration provision "under principles of equitable estoppel"); *cf. also*, *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 212 (Fla. 3d DCA 2003) (following *In re Humana* to hold that equitable estoppel did apply because the "claims stem from the same contractual obligation as Prudential is relying on"). Ms. Phillips is not trying to enforce any "obligations" under her contract with Byte. *Lawson*, 648 F.3d at 1174. Nor is she suing "to essentially enforce [her] rights under a contract[.]" *AllScripts*, 158 So. 3d at 646. Nor is she seeking to enforce against Dentsply any "duties imposed by the agreement," *id.*, she had with Byte. *Lavigne*, 967 F.3d at 1119-20.

The contract with Byte is "factually significant." *Lawson*, 648 F.3d at 1173. The contract provides the context of how Ms. Phillips ended up buying the Byte aligners and suffering financial harm. And as Dentsply notes, Ms. Phillips refers to her contract with Byte multiple times in the Amended Complaint. (D.E. 21 at 17-18).

14

But that is not enough. The contract with Byte only establishes that Ms. Phillips "would not own the product except for the contract." *Allscripts*, 158 So. 3d at 647. But such a "'but-for' relationship" between her contract with Byte and her claims against Dentsply is not enough to apply the equitable estoppel doctrine. *See id.*; *see also Lawson*, 648 F.3d at 1174. Moreover, Ms. Phillips is not suing for breach of contract or breach of any implied or express warranty in her contract with Byte. Rather, as in *In re Humana*, she is solely bringing statutory claims and seeking the remedies expressly permitted by those statutes. 285 F.3d at 976-77.

Dentsply refers to the statutory remedies that Ms. Phillips seeks, but this only further undermines its argument. (D.E. 21 at 17, 18). Sure, "the 'actual damages' to which [Ms. Phillips] believes she is entitled is the amount of money she paid to Byte under the contract." (D.E. 21 at 18). But this is only because, when, as here, "the product is rendered valueless as a result of the defect, then the purchase price is the appropriate measure of actual damages." Fla. Stand. Jury Instruction § 416.40(c) (FDUTPA – Measure of Actual Damages). *See also* Fla. § 817.14(6) (entitling plaintiff to "actual damages" proven for violations of False Advertising Statute). Dentsply never shows that Ms. Phillips "raise[s] some issue the resolution of which requires reference to or construction of some portion of the contract itself." *Allscripts*, 158 So. 3d at 647.

Contrast this case with Dentsply's cited case *Physician Consortium Services, LLC v. Molina Healthcare, Inc*., 414 Fed. Appx. 240 (11th Cir. 2011). The court compelled arbitration on a claim to enforce a guaranty where the underlying contract contained an arbitration clause. *Id*. at 242. That is the classic example of a claim depending on the contract; one cannot establish liability on a guaranty without proving a breach of the underlying contract. *Id*. at 242-43. It is nothing like this case. Or contrast this case with its cited case *Ayala-Rodriguez v. Falic Fashion Group LLC*, Case No. 18-62034-CIV, 2019 WL 13216292 at *8 (S.D. Fla. Mar. 6, 2019), where the plaintiffs

"failed to distinguish between signatories and nonsignatories," and were "bring[ing] claims exclusively arising under the Agreement [with the arbitration clause]." *Id.* at *8. Here, the Amended Complaint focuses on Dentsply, and her claims do not arise under a contract with Byte.

### 3. Any alleged concerted conduct does not automatically support equitable estoppel.

Dentsply's argument that equitable estoppel applies because Ms. Phillips "raises allegations of concerted misconduct," (D.E. 21 at 17), similarly fails. As a threshold matter, the Amended Complaint is not seeking to hold Dentsply liable for Byte's conduct. As Dentsply acknowledges, the Amended Complaint "includes no allegations at all that would justify disregarding the corporate form and never alleges Byte to be Dentsply's agent or alter ego." (D.E. 20 at 22). Rather, the Amended Complaint is focused on *Dentsply's* own acts in falsely and misleadingly promoting a product as safe and effective when it knew that it was not. (D.E. 11 at ¶¶ 8-25). *See, e.g., Rolls-Royce PLC v. Royal Caribbean Cruises LTD.,* 960 So. 2d 768, 771 (Fla. 3d DCA 2007) (rejecting equitable estoppel and denying arbitration where "the allegations point only to the action of Rolls–Royce, not the shipbuilder").

To the extent that the Amended Complaint alleges any conduct involving both Dentsply and Byte, it is still insufficient to apply equitable estoppel. As the Eleventh Circuit notes, concerted conduct standing alone, without evidence that the Plaintiff's claims are founded in the contract, is insufficient to apply equitable estoppel:

> A plaintiff's allegations of collusive behavior between the signatory and nonsignatory parties to the contract do not automatically compel a court to order arbitration of all of the plaintiff's claims against the nonsignatory defendant; rather, such allegations support an application of estoppel ***only when*** they "establish[ ] that [the] claims against [the nonsignatory are] intimately founded in and intertwined with the obligations imposed by the [contract containing the arbitration clause]." *Id.*

*In re Humana*, 285 F.3d at 975. *See, e.g., also, Prof'l Consulting Services S.A.S. v. Inmigracion Pro, LLC*, No. 23-CV-22055, 2024 WL 4103919, at *9 (S.D. Fla. Sept. 6, 2024) ("It's true that 'allegations of collusive behavior between the signatory and non[-]signatory parties' ***only support an application of equitable estoppel when 'the claims against the non[-]signatory are intimately founded in and intertwined with the obligations imposed by the contract*** containing the arbitration clause.'") (quoting *In re Humana*, 285 F.3d at 975) (emphasis added); *In re Watson*, No. 02-96223, 2006 WL 1566968, at *3 (N.D. Ga. Mar. 28, 2006) ("The Court in *In re Humana, Inc.* indicated that dependence on the contract is necessary, even if intertwined behavior is present."); *Carson v. Home Depot, Inc.*, No. 1:21-CV-4715-TWT, 2022 WL 2954327, at *4 (N.D. Ga. July 26, 2022) (describing this as "an important limitation" on the equitable estoppel doctrine)

This is consistent with Florida law. Florida state court decisions discussing "concerted misconduct" frequently cite *MS Dealer Service Corp. v. Franklin,* 177 F.3d 942 (11th Cir.1999). *See Armas,* 842 So. 2d at 212; *Rolls-Royce,* 960 So. 2d at 771. And *In re Humana* stated the above principle while discussing *MS Dealer*. It emphasized the need to look at allegations of concerted conduct in "context," and that "*MS Dealer* is not a rigid test, and each case turns on its facts." 285 F.3d at 976. And it reaffirmed that a "plaintiff's actual dependance on the underlying contract in making out the claim against the nonsignatory defendant is ***therefore always the sine qua non of an appropriate situation for applying equitable estoppel***." *Id*. (emphasis added). And Florida courts have applied *In re Humana*. *Qubty*, 817 So. 2d at 957; *Armas*, 842 So. 2d at 212.

Dentsply's reliance on equitable estoppel fails because Ms. Phillips's claims are not "intimately founded in and intertwined with the obligations imposed by," *In re Humana*, 285 F.3d at 975, her contract with Byte. The contract only establishes that Ms. Phillips "would not own the product except for the contract," which is insufficient. *Allscripts*, 158 So. 3d at 647.

Dentsply's cited case *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396 (S.D. Fla. 2014), must be viewed against this legal background. The court compelled arbitration of a claim against a non-signatory where the defendant demonstrated *both* that the plaintiff's claim relied on the terms of the contract *and* that the complaint alleged concerted misconduct. *See id*. at 1401-03. Unlike here, the plaintiffs' claims were dependent on the contracts with an arbitration clause. The plaintiffs alleged that certain loans were "unlawful debts" and that their "interest rates, as set forth in the loan documents, are usurious." *Id*. at 1401. And the claims were against parties alleged to have "originated the loans at issue[.]" *Id*. at 1398. There are no similar facts here. This is not a case about any "purportedly illegal terms," *id.* at 1403, in Ms. Phillips's contract with Byte.

**B.  Third-Party Beneficiary**

Dentsply's third-party beneficiary argument is meritless. (D.E. 21 at 19-20). Under Florida law, a "non-signatory may only avail itself of an arbitration clause, if the parties to the contract intended to primarily and directly benefit the third party." *Ya Mon Expeditions, LLC v. Int'l Yacht Broker's Ass'n*, No. 1:24-CV-20805-KMM, 2025 WL 242925, at *2-3 (S.D. Fla. Jan. 9, 2025) (quotations and citation omitted). To "find the requisite intent, it must be shown that *both* contracting parties intended to benefit the third party." *Florida Power & Light Co. v. Rd. Rock, Inc.*, 920 So. 2d 201, 203 (Fla. 4th DCA 2006) (quotations and citation omitted).

No provision of the contract between Ms. Phillips and Byte states the parties "intended to primarily and directly benefit" Dentsply. *Ya Mon*, 2025 WL 242925, at *2-3. *See also Peters v. The Keyes Co.*, 402 Fed. Appx. 448, 451 (11th Cir. 2010) (affirming denial of arbitration where "agreement contained nothing to suggest that Peters and Bank United intended to benefit Keyes, much less that the *arbitration clause* was done for Keyes's primary and direct benefit") (quotations omitted and cleaned up; emphasis in original); *Lawson*, 648 F.3d at 1172 (rejecting third party

beneficiary theory where contract "does not show, on its face or elsewhere, and intent to allow anyone other than" the signatories "to compel arbitration of a dispute"). In *Calcaterra v. Baptist Health S. Florida, Inc.*, 733 F. Supp. 3d 1349, 1355 (S.D. Fla. 2024), cited by Dentsply, the movant did not even rely on this theory. And Dentsply cites no authority for the view that the mere fact that Dentsply "benefited from sales of the products," (D.E. 21 at 19), means that "*both* contracting parties intended to benefit" Dentsply. *Florida Power & Light*, 920 So. 2d at 203.

### III. This Court has jurisdiction to determine whether this matter stays before it.

The Court should reject Dentsply's argument that an arbitrator should be the one to decide whether this case belongs in arbitration. (D.E. 21 at 20-21). Parties can agree to submit the question of arbitrability to an arbitrator. *See First Options*, 514 U.S. at 943. But here, we first have the question of whether Ms. Phillips and Dentsply ever agreed to submit *anything* to an arbitrator. Whether two parties had an agreement to arbitrate anything is for the court to decide. *See Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 296-97 (2010) ("It is well settled in both commercial and labor cases that whether parties have agreed to submi[t] a particular dispute to arbitration is typically an issue for judicial determination.") (quotations and citations omitted); *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) ("The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.' . . . Absent such an agreement, 'a court cannot compel the parties to settle their dispute in an arbitral forum.'") (quoting *First Options*, 514 U.S. at 943); *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) ("Accordingly, when determining whether an arbitration agreement exists, courts generally should apply ordinary state-law principles that govern the formation of contracts.") (quotations and citations omitted and cleaned up).

Dentsply cites parts of Ms. Phillips's agreement with *Byte* to submit arbitrability to an arbitrator and argues that "[t]hese are enforceable delegation provisions." (D.E. 21 at 21). But even if Ms. Phillips agreed with *Byte* to submit arbitrability questions to an arbitrator, it does not follow that she reached the same agreement with *Dentsply.* And the question of whether she agreed to anything with Dentsply is for this Court, not an arbitrator. *See SBMH Group DMCC v. Noadiam USA, LLC,* 297 F. Supp. 3d 1321, 1326 (S.D. Fla. 2017) (court "decline[d] to extend the scope of the delegation provision beyond its plain terms and compel Plaintiff to arbitrate a dispute it did not agree to arbitrate" where "***just because a signatory has agreed to arbitrate the issue of arbitrability does not mean that it must arbitrate with any nonsignatory***") (quotations omitted and cleaned up) (emphasis added); *see also Garn*, 2025 WL 1279071, at *3 (court did not delegate arbitrability to arbitrator where, even assuming plaintiff signed a valid arbitration agreement, the "Agreement [was] between Garn and Ticketmaster, not Garn and Defendants");  *Lopez v. United Health Group, Inc.*, No. 8:14-CV-2925-T-30AEP, 2014 WL 7404123, at *3 (M.D. Fla. Dec. 30, 2014) (court determined arbitrability where "a signatory's agreement to arbitrate the issue of arbitrability does not mean that it must arbitrate with any non-signatory").

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff Paula J. Phillips respectfully requests that the Court deny Dentsply's petition to compel arbitration and stay proceedings.

Respectfully submitted,

**LAW OFFICES OF JORDAN A. DRESNICK**
901 Brickell Key Blvd.
Suite 2901
Miami, FL 33131
Tel.: 786-220-8785

By: */s/ Jordan A. Dresnick*
Jordan A. Dresnick

Florida Bar No. 058529
E-mail: jordandresnick@gmail.com

**GROSSMAN ROTH YAFFA COHEN, P.A.**
2525 Ponce de Leon Boulevard, Suite 1150
Coral Gables, FL 33134
Telephone: 305-442-8666
Facsimile: 305-285-1668
By: _/s/ Alex Arteaga-Gomez_
Stuart Z. Grossman
Fla. Bar No. 156113
szg@grossmanroth.com
Manuel A. Arteaga-Gomez
Fla. Bar. No. 18122
aag@grossmanroth.com
Ryan J. Yaffa
Fla. Bar 1026131
rjy@grossmanroth.com

_Attorneys for Plaintiff Paula J. Phillips_